## ROBERT WRIGHT *vs.* JAMES TETLOW & another.

The delivery of the mortgaged chattels to the mortgagee, required by the Gen. Sts. *c.* 151 § 1, to render valid against third persons an unrecorded mortgage, is such a delivery as would be necessary in case of an absolute sale of those chattels.

As against the title of a third person to chattels embraced in an unrecorded mortgage, it is sufficient, under the Gen. Sts. *c.* 151, § 1, if they are delivered to the mortgagee before, and actually retained by him until, the accruing of such title.

On a trial of the title of a mortgagee to two unfinished steam-engines as against an attaching creditor of the mortgagor, there was evidence in behalf of the mortgagee tending to show that, at the time of executing the mortgage, (which was never recorded,) the mortgagor went with him through the workshop where the mortgaged property, consisting of numerous pieces, some of them of great bulk and weight, were scattered in different rooms, and showed him the various pieces, for the purpose of formally delivering them to him; that the mortgagor's clerk gave him a receipt for the mortgaged property, in which the clerk agreed to hold it for him, and to deliver it to him on demand, without any expense of storage or keeping; that, pursuant to an arrangement with the mortgagee, the mortgagor continued to work on the engines and had nearly finished them when he became insolvent; that during all this time there was no access to the shop except through the counting-room, (where the clerk was in the daytime, except on Sundays,) or through a gate which was fastened inside and was in full view from the counting-room; that, every night the clerk left the premises in charge of a watchman employed and paid by the mortgagor, and on Sundays locked them up; that, when the messenger came to take possession of the property of the mortgagor under a warrant in insolvency, the clerk told him that he was keeping the engines for the mortgagee, and accepted from him a deputation as keeper of all the property of the mortgagor, without any schedule thereof, supposing that the messenger took or could hold only the other property in the shop; and that the clerk continued to hold the engines until they were taken by an officer on a writ of replevin in favor of the creditor of the mortgagor against the messenger, and then became keeper under the officer until the latter delivered the engines to the creditor. There was contradictory evidence, in behalf of the creditor, on some points; and, among others, whether the deputation of the clerk as keeper under the messenger included the engines. And there was evidence in behalf of the creditor tending to show that, when the officer came to take the engines on his writ, the clerk refused to surrender them without an order from the messenger. The judge refused to rule that the clerk, by giving up the engines to the officer, and afterwards becoming keeper under the officer, ceased to retain them for the mortgagee as required by law; or that, if the clerk surrendered them to the officer upon an order from the messenger, there was not such a retaining of possession; or that such retaining ceased when the clerk became keeper under the messenger; or that on all the evidence there was no such taking and retaining of possession by the mortgagee as to entitle him to the engines; but submitted that question to the jury, with instructions that, if the clerk became a keeper for the officer and held for him without making any claim or giving notice of any claim in behalf of the mortgagee, and only insisting that he would not allow the engines to go into the officer's hands except on the messenger's order, it would be evidence tending to show that the clerk was not then keeping them for the mortgagee; and that, in order to return a verdict for the mortgagee, they must find that he had an actual possession of the engines, which was not purposely

kept secret; under which they were kept secured as such property should be secured under ordinary circumstances; to which the possession of the mortgagor for the purpose of finishing them was subordinate; which began before and continued when the messenger came to the shop to take possession of the property of the insolvent; and which the clerk never knowingly or actually surrendered to the messenger, making no claim and giving notice of none in behalf of the mortgagee; and that if the clerk, as agent of the mortgagor and in his behalf, was in actual possession of the engines at and just before the coming of the messenger, any previous remissness on his part would be unimportant. *Held,* that the attaching creditor had no ground of exception.

On a trial of the title of a mortgagee of chattels under an unrecorded mortgage, an instruction to the jury that, if the mortgagee took and maintained such possession of them as a deputy sheriff is required to keep in case of an attachment of like property, it would be sufficient to render the mortgage valid against a third person, is correct; and, if it does not appear that any explanations of the requirements of keeping by an attaching officer were asked for, there is no ground of exception to the judge's omission to give them.

On a trial of the issue whether there was such a delivery to the mortgagee, and retention by him, of chattels embraced in an unrecorded mortgage, as to render the mortgage valid against third persons, the admission in evidence of policies of insurance on the chattels, obtained by the mortgagor in favor of the mortgagee as part of the original transaction, is no ground of exception, if it does not appear that they were allowed any weight or effect upon the question of delivery.

A builder agreed with the United States to construct, under the superintendence of their inspectors, two steamboats, for a price certain percentages of which should be paid to him from time to time in a proportion to the progress of his work, and that the United States should have " a lien on the vessels and on all the materials provided for the fulfilment of this contract, for the money advanced or paid by the United States on account thereof." Afterwards he made a contract with a machinist for the latter to build the engines for these boats for a stipulated price for each engine when set up in the boat, and with a general understanding that he should make payments to the machinist on account of the work during its progress, but with no specification of the percentages or times of payment. As the work on the engines went on, the United States made payments to the builder, and the builder to the machinist, on account thereof. *Held,* that the latter contract did not transfer the property in the engines to the builder before their completion, nor the former contract divest the machinist of his property in them.

REPLEVIN of the materials composing the parts of two unfinished steam engines.

At the trial in the superior court, before *Ames,* C. J., it appeared that the defendant Tetlow on December 3, 1864, entered into a contract with the United States to build two iron tugboats, with all their steam machinery; in which it was stipulated that the work should be superintended by inspectors appointed by the United States, that certain percentages of the contract price should from time to time be paid by the United States to Tetlow, in a proportion to the progress of his work and that the United States should have " a lien on the vessels,

and on all the materials provided for the fulfilment of this contract, for the money advanced or paid by the United States on account thereof." It also appeared that Tetlow entered into a contract with Hepworth & Carr, who were machinists doing business at a workshop on Foundry Street in South Boston, to build the steam-engines for these boats, for the price of $20,000 for each engine when set up in the boat, and with a general understanding that Tetlow should make payments to Hepworth & Carr during the progress of their work, but without stipulating the sums of which such payments should consist, or fixing the times at which they should be made. There was evidence offered by the defendants tending to prove that on July 25, 1865, Tetlow had paid to Hepworth & Carr $27,000 under this contract, and that not more than three eighths of the labor on the engines had then been finished, nor more than $17,000 spent by Hepworth & Carr for such labor; but the plaintiff offered evidence which tended to prove, on the contrary, that an expenditure of not more than $8000 was then needful to complete the engines and set them in place on the boats. And the defendants also offered evidence that " the material for certain parts of said engines had been approved " by the inspectors, and " payments made thereon before July 25 to said Tetlow " by the United States, and that " insurance had been effected upon said engines for the benefit of the United States."

It further appeared that on July 25, 1865, Hepworth & Carr executed to the plaintiff a bill of sale of these engines as they then lay unfinished in the shop on Foundry Street, for a consideration named of $15,000; and, at the same time and as part of the same transaction, the plaintiff, for a nominal consideration, executed to Hepworth & Carr an instrument agreeing, upon payment by them to him of $15,000 at any time within two months from that date, to sell and convey to them the two engines, " the same to be at the risk and expense of the said Hepworth & Carr from this date, and, in case the same should be injured or spoiled by fire or otherwise, said Wright shall be required only to convey said engines in their then condition, upon the full payment of the sum of $15,000, after deducting

any sum received for insurance;" and Seth A. Choate, a person in the employment of Hepworth & Carr, signed at the same time a receipt to Wright for the two engines, agreeing " to hold the same for said Wright, and to deliver the same to him, without any expense to him for storage or keeping, on demand."

The case otherwise is stated in the opinion. After a verdict for the plaintiff, the defendants alleged exceptions.

*E. D. Sohier & C. A. Welch*, for the defendants.

*A. A. Ranney*, (*N. Morse* with him,) for the plaintiff.

GRAY, J. We may assume, as contended by the defendants, and as being the most favorable view to them, that the instru ments which passed between Hepworth & Carr and the plaintiff constituted a mortgage from them to him.

By the Gen. Sts. *c.* 151, § 1, a mortgage of personal property (except a ship or vessel, or goods at sea or abroad) is not valid against any person other than the parties thereto, unless it is recorded, " or the property mortgaged is delivered to and retained by the mortgagee." Before the passage of the St. of 1832, *c.* 157, of which this provision is a reënactment, possession was not necessary to give effect to a mortgage, made in good faith, even as against third persons. *Homes* v. *Crane*, 2 Pick. 607. The manifest intention of the legislature was, to require in the case of an unrecorded mortgage of chattels such delivery of possession as would be necessary in the case of an absolute sale, which need not be recorded. The nature of the possession must depend upon the bulk and character of the property. The possession of mortgaged chattels must indeed, by the statute, not only be delivered to, but retained by, the mortgagee; but it is sufficient if it be delivered before and actually retained until the accruing of any title which is set up by a third person in opposition to the mortgage. *Mitchell* v. *Black*, 6 Gray, 106.

The property in this case consisted of the parts of two unfinished steam-engines in the workshop of the mortgagors. These parts were very numerous, some of them of great bulk and weight, and were scattered in different rooms of the shop. At the time of executing the mortgage, and for the purpose of a formal delivery of the property, one of the mortgagors went

through the shop with the plaintiff, and showed him the various parts and pieces of the engines; Choate, who was employed by the mortgagors as bookkeeper and paymaster and to keep the time of their workmen and attend to such of their business out of doors as he might be directed to attend to, signed and gave to the plaintiff a receipt for the engines and all the parts and pieces thereof, agreeing to hold the same for him and to deliver them to him on demand, without any expense of storage or keeping; and it was arranged and understood between the parties that the mortgagors should go on and finish the engines. The workmen accordingly continued to work on the different parts under the direction of the mortgagors as they had done previously. And no directions were given to keep the transaction secret. There was evidence tending to show that there was no access to the premises except through the counting-room in which Choate was, or the front gate which was fastened on the inside and was in full view of the counting-room; that Choate left the premises from six in the evening to seven in the morning in charge of a watchman in the employ and pay of the mortgagors, and locked them up on Sundays; that the mortgagors became insolvent; that Choate told Bayley, the messenger who came to take possession of the property under a warrant in insolvency, that he was keeping the various parts of the engines for the plaintiff; and accepted a deputation from the messenger as keeper of all the property of Hepworth & Carr, without any schedule thereof, supposing however that the messenger took or could hold only the other property which belonged to Hepworth & Carr or which was attachable as their property; that Choate afterwards continued to hold the engines until Merrill, a deputy sheriff, came and took them on a writ of replevin in favor of Tetlow against Bayley; and that Choate was afterwards appointed keeper by Merrill, and continued to hold the property until Merrill delivered it to Tetlow.

If the conveyance from Hepworth & Carr had been an absolute one, this evidence would have warranted a jury in finding a sufficient delivery of possession to the plaintiff as against attaching creditors of articles like these; and the fact that the

person having the custody of the property in behalf of the vendee was in the employ and pay of the vendors would not make the delivery and possession less effectual. *Carter* v. *Willard,* 19 Pick. 1. *Bullard* v. *Wait,* 16 Gray, 55.

The defendants indeed introduced contradictory testimony upon some points; but the question whether upon the whole evidence an actual delivery of possession was proved was a question for the jury under proper instructions. *Phelps* v. *Cutler,* 4 Gray, 137.

The presiding judge therefore rightly refused to rule that there was no such taking and retaining of possession of the engines by the plaintiff as to entitle him to maintain this action.

The instructions given were sufficiently favorable to the defendants. They required the jury to find that the plaintiff had actual, and not merely constructive possession; that he kept and secured the property as such property is under ordinary circumstances required to be secured; that the possession of Hepworth & Carr for the purpose of finishing the engines was subordinate to Choate's possession and merely for the purpose of increasing the value of the property; that his possession was not purposely kept secret or concealed; that it began before, and continued when, the messenger came to the premises to take possession; and that Choate, as the plaintiff's agent and in his behalf, at that time had the property in his effectual control and in his actual keeping and possession. The instruction that if Choate, as the plaintiff's agent and in his behalf, was in actual possession of the property at and just before that time, any previous remissness on his part would be unimportant, was open to no just objection. *Mitchell* v. *Black,* above cited. The request for an instruction that, even if the previous acts of Choate constituted such a retention of possession as was required by law, yet such retention in behalf of the plaintiff ceased by Choate's becoming the keeper under the messenger, was rightly refused. There was conflicting evidence upon the point whether his deputation as keeper included these engines; and the jury were expressly instructed that if he at that time knowingly or actually surrendered the property to the messenger, making no claim and

giving no notice of claim on behalf of the plaintiff, it would be a failure of continuity of possession, which would be fatal to the plaintiff's title.

The rulings requested, that Choate, by giving up the property to Merrill when he claimed it upon a writ of replevin, and afterwards becoming a keeper of the property for him, ceased to retain it for the plaintiff as required by law; and that if (as Merrill testified) Choate surrendered it to Merrill upon an order from Bayley, then there was not such a retaining of possession in behalf of the plaintiff as was required by law; were rightly refused. If the deputy sheriff claimed the possession under the authority of the writ of replevin which he held, Choate's allowing him to take it into his own possession, and (after he had so taken it and thus wrongfully deprived the plaintiff of the possession previously kept in his behalf by Choate) agreeing to act as his keeper, was not necessarily an abandonment of the plaintiff's possession. The circumstances under which the sheriff took possession were rightly submitted to the jury as evidence bearing upon the character of Choate's possession; with an instruction that " if Choate became a keeper for Merrill and held for him, without making any claim or giving any notice of any on behalf of the plaintiff, and only insisting that he would not allow the property to go into Merrill's hands excepting on Bayley's order, it would be evidence tending to show that Choate was not keeping the property for the plaintiff and was not the plaintiff's agent at that time."

The instruction that it would be sufficient, if Choate took and maintained such possession as a deputy sheriff is required to keep in case of an attachment of like property, was correct. *Sanderson* v. *Edwards*, 16 Pick. 145, 146. *Shepherd* v. *Butterfield*, 4 Cush. 425. As it does not appear that the defendants asked for more particular explanations of the requirements of keeping by an attaching officer, they have no ground of exception to the omission to give them.

The policies of insurance on the property, obtained by Hepworth & Carr in favor of the plaintiff on the day of the execution of the instruments which passed between them, were part of the transaction between the parties; and the bill of excep-

tions does not show that they were allowed any weight or effect upon the question of delivery. The defendants therefore have no ground of exception to their introduction.

The contract between Hepworth & Carr and Tetlow for the manufacture of the engines did not transfer the property in them to Tetlow before their completion. *Briggs* v. *Light Boat*, 7 Allen, 293, and cases cited. The contract between Tetlow and the United States did not divest Hepworth & Carr of their property in the engines, or deprive them of the power to mortgage them for a valuable consideration to the plaintiff. Neither these contracts nor the payments made under them can affect the plaintiff's rights as mortgagee.                    *Exceptions overruled.*