## JOSHUA B. STEARNS *vs.* HORATIO G. HERRICK.

Essex.   Nov. 2, 1881. — Jan. 5, 1882.   MORTON & ALLEN, JJ., absent.

If a person adds to goods, acquired under a fraudulent sale in which he partici-
pated, other goods subsequently purchased, he is not entitled, in an action
against an officer, who attaches all the goods as the property of the fraudulent
vendor of the first-named goods, to recover the value of the goods subsequently
purchased, if the mingling them with the other goods was purposely done, or
through want of proper care.

TORT against the sheriff of Essex, for the conversion of the
stock of goods in a grocery.   Answer, that the goods were at-
tached as the property of Joseph S. Stearns, on a writ in favor
of F. H. Marshall, and that whatever title the plaintiff had to
said goods was fraudulent as to the creditors of said Joseph.   At
the trial in the Superior Court, before *Brigham*, C. J., the jury
returned a verdict for the defendant; and the plaintiff alleged
exceptions, which appear in the opinion.

*S. B. Ives, Jr.*, for the plaintiff.

*H. Carter*, for the defendant.

LORD, J.   There was no error at the trial prejudicial to the
plaintiff.   The defendant attached a stock of goods in Grove-
land, as the property of one Joseph S. Stearns.   The plaintiff
contended that the stock of goods was wholly his; that he de-
rived his title to a portion of them from Joseph S. Stearns
directly; to another portion of them from Joseph S. Stearns's
mother, who within a few days had purchased them of Joseph
and sold them to him; and that subsequently to those pur-
chases he had bought some articles in Boston and added them
to the stock.   The claim of the defendant was that this whole
proceeding was a fraud, in which the plaintiff and Joseph par-
ticipated, upon the creditors of Joseph; and that the business
was still the business of Joseph.   Upon these several claims,
when the case came on for trial, the various questions were
referred to an auditor, who "found generally for the defendant,
on the ground that the sale by Joseph was fraudulent and void
as against the creditors of said Joseph, and that the subsequent
purchases were for the benefit of said Joseph."

It will be observed that no question can arise upon the inter-
mixture of goods, or upon the relative duties of the parties in

reference thereto, until it is established that the original purchase of Joseph was fraudulent, and the subsequent purchase or purchases valid; for if the original purchase were valid, and not fraudulent, the plaintiff would be entitled to recover for the value of the entire property, so that the question of intermixture cannot arise, until it is proved that he has himself made the intermixture of his own goods with others which he knew he had obtained fraudulently, for the purpose of preventing an act exactly of this kind, namely, the attachment of them as the property of Joseph.

It is not necessary for us to say, as matter of law, that these facts preclude the plaintiff from recovering. It is not necessary to say, as matter of law, that if a man purchases of another a stock of goods for the very purpose of defeating and defrauding his creditors, and leaves the fraudulent vendor in possession of the stock of goods, and in the apparent control and management of them, the ordinary accretions from time to time of such stock, while in the custody of the fraudulent vendor, become a part of the same.

These are questions not necessary to pass upon in this case; for in substance the charge of the presiding judge entitled the plaintiff to recover the value of goods subsequently purchased, unless the mingling them with the other goods was purposely made, or through want of proper care. Such an act, under the facts of this case, must necessarily be a fraudulent act.

A person thus palpably engaged in a purpose to cheat and defraud the creditors of another has no reason to complain that the Chief Justice presiding submitted the propriety of his acts to a jury, instead of ruling upon their legal effect.

*Exceptions overruled.*