HAGE, Respondent, vs. CAMPBELL, Appellant.

*September 29, 1890 — February 3, 1891.*

*Partnership: Chattel mortgages: Fraudulent conveyances: Conversion: Evidence of value.*

1. A solvent firm may assume an individual debt of one of the partners.
2. The facts that the books of the firm contain no entry of the transaction, and that no note or other security was given for the individual debt alleged to have been assumed by the firm, are not conclusive that such debt did not become a valid partnership liability, or that

Hage vs. Campbell.

a chattel mortgage subsequently given to secure it was fraudulent, but may be considered in determining those questions.

3. A firm, even though in failing circumstances, may give a chattel mortgage to secure a *bona fide* partnership indebtedness.

4. Unless restricted by the copartnership articles, one partner may, without the consent of his absent copartner, give a chattel mortgage of partnership property to secure a firm debt.

5. A mortgagee, upon taking possession of the mortgaged goods, may employ one of the mortgagors, as clerk or agent, to sell the goods and pay over the proceeds.

6. In an action for the wrongful conversion of mortgaged chattels by the sheriff under an attachment, where the answer denied that the goods were of any other or greater value than a certain sum, no further proof of value was necessary if the recovery was less than the sum so stated, with interest.

APPEAL from the Circuit Court for *St. Croix* County.

Action for the wrongful conversion of personal property. The defendant, who was the sheriff of St. Croix county, justified the taking under a writ of attachment against the firm of Hagen Bros., issued in an action brought by creditors of that firm. The facts will sufficiently appear from the opinion. There was a verdict in favor of the plaintiff for $974.18, and from the judgment thereon the defendant appealed.

For the appellant there was a brief by *Ray S. Reid* and *Chas. P. Brown*, and oral argument by *Mr. Reid*.

For the respondent the cause was submitted by *W. Goss*.

The following opinion was filed November 25, 1890.

Cole, C. J. It would be impossible, without writing a very long opinion, to notice in detail all the errors assigned for a reversal of the judgment in this case, nor is such an extended discussion necessary to dispose of the questions involved. A reference to a few elementary principles of law is all that need be said upon the numerous errors assigned.

The plaintiff's right to recover the value of the goods in

controversy depends entirely upon the validity of a chattel mortgage given to him by the Hagen Bros., dated May 3, 1886.  If that mortgage is valid as against the creditors of the firm, the judgment is correct.  The objection taken to this mortgage is that it was not given to secure the payment of a partnership debt, and is therefore void as to the firm creditors.  We think the jury must have found, under the charge of the court, that the mortgage was given to secure the *bona fide* indebtedness of the firm, and that there was no fraudulent intent in giving it.  That there was evidence tending to establish these facts cannot be successfully denied if the plaintiff's testimony is to be believed; for he testified, in substance, that he loaned Iver Hagen $600 in June, 1884, and that before Christmas, 1885, he loaned both Iver and Torger $200 more.  In June, 1884, Iver and one Canudson were in partnership, and the plaintiff said the $600 which he loaned Iver Hagen was used by them to purchase goods for the firm.  It does not clearly appear that Iver made the loan of $600 for the firm of Hagen & Canudson, though probably the loan inured to the benefit of the firm.  The plaintiff does say that Canudson had nothing to do in borrowing the $600 from him, by which he means, as we understand his testimony, that Canudson did not act in the matter.  This, of course, might be true and still it might be the fact that Iver acted for the firm in making the loan.  It satisfactorily appears that the firm had the benefit of the loan, and that the money was applied to purchase goods for the firm.  But, it is said, *non constat* but this $600 was Iver's contribution to the capital stock of the partnership.

But the matter, as to whether this debt was one that the firm was liable to pay, does not rest upon the facts above stated.  It appears that in the spring or summer of 1885 Torger Hagen purchased the interest of Canudson in the firm, and that then he and Iver both promised to pay the

plaintiff the $600 loan. Now, if it be assumed that the
$600 was originally loaned to Iver, and that it was his indi-
vidual debt, yet as the money had been used to purchase
goods for the firm, could not the partners, when the new
firm was organized, assume this debt and bind the firm to
pay it? There is nothing to show that the firm was insolv-
ent at this time, and we suppose it might bind the firm to
pay the individual debt of one of the partners. We do not
understand that such an application of the assets, or such a
liability assumed, would be a fraud upon partnership cred-
itors, if the firm was solvent and able to pay its other debts
at the time. The learned circuit court distinctly charged
that, if the debt was the individual debt of Iver Hagen, it
must have been assumed by the partnership so as to become
a firm liability, in order to sustain the mortgage which was
subsequently given. But, that a solvent firm might assume
the individual debt of one of the partners, and agree to pay
it out of the partnership property, and give a valid mort-
gage on its stock for that purpose, providing the transaction
was free from fraud, is clear. So that if, at the time the
new firm was organized, the debt became a partnership lia-
bility by the firm's assuming it and agreeing to pay it, then
the claim stood upon the same footing as any other firm
debt. This is not the language of the charge, but is its
meaning and the sense in which the jury must naturally
have understood it.

It seems to us the court was right in this view of the
law. There can be no doubt that the jury were satisfied
from the evidence that when the new firm was organized
this $600 loan was assumed by the firm and became the
partnership debt of Hagen Bros.; and it is not claimed
that the firm was insolvent at that time. If the firm was
insolvent it could not assume the individual debt of a part-
ner and secure its payment by a mortgage upon the part-
nership property, as such an act would be in fraud of the

partnership creditors, who had the right to be first paid; and so the jury were instructed.

As to the $200 which the plaintiff loaned Hagen Bros. about a month before Christmas, in 1885, there can be no question but that it was a partnership debt. It is argued that, if the $600 loan had in fact become a partnership debt, the books of Hagen Bros. should have shown a credit for that amount in favor of the plaintiff, or that a note or some security should have been given the plaintiff as evidence of the firm liability. Correct business methods would doubtless have required some entry of the transaction upon the books of the firm, but the business seems to have been done very loosely, the parties having confidence in each other, and trusting to the oral agreement. It does not appear that there was any entry made of the $200 on the firm books, or any note given for it, though unquestionably it was a loan to the firm of Hagen Bros. The court instructed the jury that the facts that the books of Hagen Bros. did not show a credit in favor of the plaintiff for his money loaned, and that no note was given nor security taken, nor agreement made as to when the money was to be repaid, were circumstances to be weighed when considering the credibility of the plaintiff's testimony. These were proper matters to be considered in determining the question as to whether the debt was a valid partnership liability, or whether the chattel mortgage was given for any fraudulent purpose.

The mortgage was given, as we have said, on the 3d of May, 1886. At that time the firm of Hagen Bros. was embarrassed and in failing circumstances. But the mortgage was given by one partner, in the absence of the other partner, to secure an existing firm liability. Could not such a security be given to secure an honest *bona fide* debt, where there was no intent to cover up property for the benefit of Hagen Bros., or to defraud their other creditors?

We suppose the plaintiff had the right to take the mortgage and secure himself, even though the other creditors might suffer by his doing so. One creditor has the right to induce a failing debtor to pay or secure his debt, and the fact that they might lessen the ability of the debtor to pay other creditors does not necessarily avoid the payment or invalidate the security. The mortgage was given to secure the payment of $910.61, the amount of the firm debt, and the property mortgaged was not worth much more than that sum.

There is an objection that the property was not sufficiently described in the mortgage, but we think the objection is not well taken. The schedule referred to, and attached to the mortgage, clearly identifies and describes the property embraced in the instrument. It does describe the articles in the "show-cases" with sufficient fullness to indicate what property was intended to be covered by the mortgage.

The mortgage was given by Torger Hagen on behalf of the firm, in the absence and without the knowledge of the other partner, Iver Hagen, who was absent in Dakota. We suppose one partner may, without the consent of his copartner, being absent, pay a debt or execute a mortgage in the name of the firm upon partnership property to secure a firm debt. The power of each partner to bind the firm fairly extends to such a transaction, unless restricted by the articles of copartnership, and it does not appear that there was any such restriction on the power of the partner in this case. It was clearly within the scope of the implied authority of Torger to execute the mortgage, as much as selling the goods or collecting the debts due the firm. This proposition seems too plain to require discussion.

The mortgagee, deeming himself insecure, took possession at once of the mortgaged property, as he had the right to do, and employed Torger, as agent or clerk, to sell the

Hage vs. Campbell.

goods and pay over the proceeds to him, to be applied upon the mortgage debt. There is no legal objection to such an arrangement. It certainly did not create any secret trust, as counsel suggests. The plaintiff might employ the mortgagor to sell the goods for him and pay over the proceeds of all sales made.

The action is for a wrongful conversion of the goods, alleged in the complaint to be of the value of $1,147.41. The defendant, as sheriff, seized the goods under attachments issued in favor of the creditors of the firm of Hagen Bros. In the answer the defendant denies that the goods were "of any other or greater value than $917.63." This, fairly construed, must be deemed to refer to the mortgaged property mentioned in the complaint. A point is made that the value of the property was not proven on the trial. It certainly appears that the property did not exceed the amount due upon the note and mortgage, and, in view of the admission in the answer as to the value, we think no further proof as to that fact was necessary. The recovery was less than the value stated in the answer and the interest thereon to the commencement of the action.

This disposes of all the material questions. The case seems to have been fairly submitted, under proper instructions as to the law for the guidance of the jury, and the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.

A motion for a rehearing was denied February 3, 1891.