## JOSEPH B. MOORS & another *vs.* SAMUEL R. READING & another.

Suffolk.    November 20, 1896. — January 8, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Mortgage or Pledge — Retention of Possession — Maintenance of Lien.*

A. lent money to B., who was a dealer in merchandise, carrying a stock of goods in his store, and who executed to A. a general collateral agreement, setting forth that all the merchandise transferred or to be transferred by B. to A. should be held only as security for B.'s present or future indebtedness to A. B. also, about once a month, executed to A. a bill of sale of the goods in his store. Soon after the date of each bill, A. took possession of the goods, by touching some of them, by appointing B.'s clerk as his agent to take and hold possession for A., and by his acceptance of such agency. As new bills of sale were received, A. gave written orders to the clerk to deliver to B. in gross amounts portions of the goods included in former bills of sale. B. made sales from all the goods in the store, without regard to whether or not they had been released by A., and this was permitted by the clerk, who, whenever he thought the amount of an order had been fully drawn, would get a new one. No separation of the goods covered by these orders was made, and new goods as they came in, sometimes between the date of the bill of sale and the day of taking possession, were mingled with the old. The proceeds of the sales went to B., who paid the clerk solely. B. finally went into insolvency, and his assignee took possession of the goods. *Held,* in an action of replevin by A., that, whether he was a mortgagee or pledgee, he had failed to retain such possession of the goods as to enable him to maintain his lien.

REPLEVIN of a quantity of iron. Trial in the Superior Court, before *Blodgett,* J., who ruled that the action could not be maintained; directed the jury to return a verdict for the defendants; and, at the request of the parties, reported the case for the determination of this court. The facts appear in the opinion.

*R. M. Morse,* (*J. Duff* with him,) for the plaintiffs.

*S. L. Whipple,* (*W. R. Sears* with him,) for the defendants.

ALLEN, J. The question in this case is whether there was any evidence for the jury that the plaintiffs took and retained possession so as to give them a valid title to the goods replevied. If they were mortgagees, their title would not be valid unless the mortgaged property was delivered to and retained by them, no record of the mortgages having been made. St. 1883, c. 73, § 2. If, however, they were pledgees, their title would also fail

unless the property was delivered to and retained by them. So that it makes no difference in the determination of the case whether they were mortgagees or pledgees. *Blanchard* v. *Cooke*, 144 Mass. 207, 225.

The facts upon which the decision must depend are not now in dispute. Those which were proved, or which the plaintiffs' evidence tended to prove, may be summed up as follows.

One Houdlette was a dealer in iron, carrying a stock of goods in his store in Boston. In 1889, he borrowed money of the plaintiffs, which has never been repaid, and which the plaintiffs sought to secure in the following manner. Houdlette executed to the plaintiffs a general collateral agreement, so called, setting forth that all the merchandise transferred or to be thereafter transferred by him to them should be held only as security for his present or future indebtedness to them. He also from time to time, usually about once a month, executed to them a bill of sale of goods in his store. In some instances, but not always, upon receiving the bills of sale, they executed and delivered to him a special instrument of defeasance. These bills of sale were intended to cover all of the stock of goods in store from time to time, and did so cover it, except so far as new goods may have come in between the dates of two transactions, or as goods may have been released on orders, as hereinafter stated. Soon after the date of each bill of sale, the plaintiffs took possession by going to Houdlette's store, where statements were made by or in behalf of Houdlette that possession of the goods was given, and on behalf of the plaintiffs that possession was taken, by touching some of them, by appointing Houdlette's bookkeeper as agent of the plaintiffs to take and hold possession of the goods for them, and by his acceptance of such agency. From time to time, as new bills of sale were received, the plaintiffs gave written orders to the bookkeeper to deliver to Houdlette portions of the goods included in former bills of sale. These orders were usually for round amounts, as called for by Houdlette's bookkeeper, being about the same in amount as the amounts of the new bills of sale; the amount being fixed by what the bookkeeper thought would be sufficient to cover the deliveries by Houdlette for the next month. The quantities in these orders were expressed in gross, as, for example, 75,000

pounds sheet plate iron and steel, 50,000 pounds angle iron, 200 kegs rivets. It was not intended to make sales of goods in excess of the amounts covered by these orders; but Houdlette made sales from all the goods in store, without regard to whether they had or had not been released by the plaintiffs, and this was permitted by the bookkeeper. Whenever the bookkeeper thought the amount of an order had been fully drawn, he would get a new one. No setting apart or separation of the goods covered by these orders was made; and new goods as they came in were mingled with the old, and there was nothing to distinguish them. Sales were made from the general stock of goods on hand, without discrimination; and the proceeds of the sales went to Houdlette. The bookkeeper was paid by Houdlette, and the plaintiffs did not pay or agree to pay him anything. Since the plaintiffs did not take possession on the day of the date of each bill of sale, there were usually some goods in the store which had come in between the date of the bill of sale and the day of taking possession, and which therefore were not covered by the bills of sale. No attempt was made to keep such goods separate. The above methods were pursued for nearly four years, at the end of which time Houdlette went into insolvency, and his assignees took possession of the goods.

If it be assumed that there was from time to time a sufficient taking of possession by the plaintiffs at the outset, the facts effectually negative the plaintiffs' view that there was any such retention of possession by them as to meet the requirements of the law. The obvious purpose of the statutory provision as to unrecorded mortgages, and of the rule of law as to the retention of possession by pledgees, is to prevent mortgagors or pledgors, by means of their possession of the property, from misleading people into the belief that they are its real owners. Accordingly the rule is general that, if mortgagors whose mortgages are unrecorded and pledgors are allowed to remain in possession of the mortgaged or pledged property, the mortgagees or pledgees will lose their lien. Possession or control of the property may be given to a mortgagor or pledgor for certain special purposes, without producing this effect : e. g. to make sale thereof for the sole benefit of the mortgagee or pledgee, or to keep the property specifically for him for a time as his bailee or agent. There are

numerous cases in which the question has arisen and been determined whether, under certain particular facts, the lien of a mortgagee or pledgee has been lost by reason of permitting the mortgagor or pledgor to be in possession of the property. *Kellogg* v. *Tompson*, 142 Mass. 76. *Moors* v. *Wyman*, 146 Mass. 60. *Thacher* v. *Moors*, 134 Mass. 156. *Thompson* v. *Dolliver*, 132 Mass. 103. *Thayer* v. *Dwight*, 104 Mass. 254. *Wright* v. *Tetlow*, 99 Mass. 397. *Carpenter* v. *Snelling*, 97 Mass. 452. *Walker* v. *Staples*, 5 Allen, 34. *Way* v. *Davidson*, 12 Gray, 465. *Casey* v. *Cavaroc*, 96 U. S. 467. *Bank of Leavenworth* v. *Hunt*, 11 Wall. 391. *Steele* v. *Benham*, 84 N. Y. 634. *Button* v. *Rathbone*, 126 N. Y. 187. *Doyle* v. *Stevens*, 4 Mich. 86. *First National Bank of Stanton* v. *Summers*, 75 Mich. 107. *Menzies* v. *Dodd*, 19 Wis. 343. *Hage* v. *Campbell*, 78 Wis. 572. *Swiggett* v. *Dodson*, 38 Kans. 702. *Brunswick* v. *McClay*, 7 Neb. 137. *Pickard* v. *Marriage*, L. R. 1 Ex. D. 364. *Northwestern Bank* v. *Poynter*, [1895] A. C. 56. No one of these cases presents facts exactly like those now before us. But the rule to be deduced from them, which is applicable to the present case, appears to be clear. The plaintiffs appointed Houdlette's bookkeeper as their agent, so that there was no apparent change of possession. The goods which were at any time covered by the bills of sale were not set apart, and kept separate and free from intermixture with other goods not covered by the bills of sale. Whenever new goods were bought by Houdlette, they were added to the general stock on hand. Whenever the plaintiffs gave orders for the delivery or release of goods to Houdlette in order to enable him to make current sales, no separation was made of the goods embraced in such orders. The arrangement was made with the obvious purpose, or at any rate with the effect, of enabling Houdlette to carry on his business in the usual manner and without exciting suspicion; and there never was a day, so far as appears, when he might not have sold any particular piece or parcel of goods in his store without violating his understanding with the plaintiffs. From month to month, the plaintiffs signed orders for the release of goods in gross amounts from their lien, and of such quantities as would probably be sufficient to supply Houdlette's customers; and new orders of the same kind were signed as often as was necessary. There was no attempt to

keep distinct and separate any specific portions of the stock of goods, as those which were subject to the plaintiffs' lien. This was the habitual and universal method adopted by the plaintiffs or by their agent.

This course of business is inconsistent with the view that the plaintiffs retained possession of any specific part of the goods. There was at best a confusion and intermixture of mortgaged with unmortgaged, or of pledged with unpledged goods, so that the two classes were indistinguishable, and this was done by the permission or through the neglect of the plaintiffs or of their agent. The plaintiffs no longer retained the sole possession of the mortgaged goods. They either lost the possession entirely, or were merely tenants in common with Houdlette. *Ryder* v. *Hathaway*, 21 Pick. 298. *Forbes* v. *Fitchburg Railroad*, 133 Mass. 154, 160. 2 Kent, Com. 365, note, and cases cited. Story, Bailm. § 40. *Willard* v. *Rice*, 11 Met. 493. *Adams* v. *Wildes*, 107 Mass. 123. *Stearns* v. *Herrick*, 132 Mass. 114. *The Idaho*, 93 U. S. 575.

Upon the undisputed facts, the plaintiffs failed to retain such possession as the law requires in order to maintain their lien. To hold otherwise would enable parties to practise the very frauds which the statute as to unrecorded mortgages of personal property, and the rule of law as to the duty of pledgees to retain possession of the pledged property, seek to prevent.

The title of the defendants as assignees in insolvency of Houdlette must accordingly prevail. *Bingham* v. *Jordan*, 1 Allen, 373. *Low* v. *Welch*, 139 Mass. 33. *Blanchard* v. *Cooke*, 144 Mass. 207, 218, 226. *Casey* v. *Cavaroc*, 96 U. S. 467.

*Judgment on the verdict for the defendants.*