In re JULES & FREDERIC CO.

(District Court, D. Massachusetts. October 30, 1911.)

1. BANKRUPTCY (§ 184*)—PROPERTY—TRANSFER—"PARTY"—VALIDITY UNDER STATE LAW.

The mortgagor's trustee in bankruptcy is not a "party" to the mortgage, within Rev. Laws Mass. c. 198, § 1, providing that, unless property mortgaged has been delivered to and retained by the mortgagee,

the mortgage shall not be valid against a person, other than the parties thereto, until it has been recorded as required, etc.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*

For other definitions, see Words and Phrases, vol. 6, pp. 5202–5213; vol. 8, p. 7747.]

**2. CHATTEL MORTGAGES (§ 188*)—POSSESSION—DELIVERY TO MORTGAGEE.**

Where the parties to an unrecorded chattel mortgage on a retail stock of goods went through the form of making a delivery of so much of the stock in trade as was in the store when the mortgage was made, but the arrangements made were for the obvious purpose and with the effect of enabling the mortgagor to carry on the business in the usual manner without exciting suspicion that its goods had been transferred, and none of the goods were such, or were so located, as to be under the control of the mortgagor's employé, whom the mortgagee undertook to make his agent for the purpose of retaining possession, there was no such change of possession as was required by Rev. Laws Mass. c. 198, § 1, to render an unrecorded chattel mortgage valid as against creditors.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 393–404; Dec. Dig. § 188.*]

**3. CHATTEL MORTGAGES (§ 198*)—POSSESSION—ATTACHMENT.**

A chattel mortgagee, whose mortgage had not been recorded, could not validate the same as to creditors by taking possession of the goods while a deputy sheriff was in possession under a creditor's attachment, regardless of whether the suit was really for the benefit of the treasurer of the bankrupt, or whatever his relations to or previous dealings with the mortgagee and the president of the bankrupt company.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 442–449; Dec. Dig. § 198.*]

**4. BANKRUPTCY (§ 184*)—FILING PETITION—EFFECT.**

No possession taken by a chattel mortgagee holding under an unrecorded mortgage, taken after the filing of a bankruptcy petition, can avail him.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

In the Matter of Bankruptcy Proceedings of the Jules & Frederic Company. On petition for review of an order by the referee avoiding a mortgage of personal property given by the bankrupt to James H. Duffy. Affirmed.

The following is the opinion of Olmstead, Referee:

This was a petition to review a decree of the referee setting aside and declaring null and void a mortgage given by the debtor company to the respondent, James H. Duffy. The petition alleged that the mortgage constituted a fraudulent preference, and was void for want of record, or that no valid possession was taken in accordance with the Revised Laws of Massachusetts, and was also invalid as being given in violation of the so-called sales in bulk law. The respondent was made a party to these proceedings, duly appeared, and filed an answer. The facts I find to be as follows:

Mr. A. Jules Aylies and Mr. Frederick L. Carpenter in September, 1907, formed a corporation known as the Jules & Frederic Company, for the purpose of doing a business of millinery and hair-dressing in said Boston. Mr. Carpenter was chosen the president of the company, and Mr. Aylies its manager, treasurer, and secretary. The concern subleased premises at 380 Boylston street from Mr. Carpenter, on which extensive repairs had been made, and for which repairs Mr. Carpenter procured a note from the com-

pany for $4,175. The business was begun early in the year 1908, but did not prove successful. In fact, as Mr. Aylies testified, they were losing money. It became, therefore, necessary early in the year 1909 to take steps to procure either more capital or loans in order to carry it on. The respondent, who had acted as counsel for Mr. Carpenter, and to whom the latter owed about $400 or $500, was induced to make a loan of $1,500 to the company on March 2, 1909, which was secured by a mortgage in the sum of $5,-675. This was done pursuant to a vote of the corporation passed on March 1, 1909, but which was not copied into the record book until May 23d. Prior to this, in February, a statement had been given to Mr. Duffy, showing the assets of the company to be in excess of liabilities; but this statement omitted an indebtedness of about $8,000 to Mr. Aylies for money advanced by him, and if this omission had been supplied I find that Mr. Duffy would have been made aware of the insolvent condition of the company at this time. Its existence, however, was known by Mr. Carpenter, who had solicited the loan from Mr. Duffy, and had informed him of the company's condition. Upon giving the mortgage on March 2d an attempt was made by Mr. Duffy and Mr. Carpenter to take possession, and resort was had to the device of making Miss Mazur, a bookkeeper, the agent for the mortgagee. She testifies that she had no knowledge of a mortgage, that she was told to take the key of the premises, but was ignorant of the meaning of the whole transaction.

The evidence shows that the business was conducted from March 2d until May 24th, when the attachment was made, in the same manner that it had always been, that Mr. Duffy paid no rent for the premises, and in fact Mr. Carpenter admitted that there was no ostensible change in the form of doing business after the mortgage. On the 24th of May a keeper was put in, and then Mr. Duffy sought to fortify his alleged possession by substituting a new agent or keeper. On the 26th of May the notice of foreclosure of this mortgage was recorded, and on the same day an involuntary petition in bankruptcy was filed upon which the company was subsequently adjudicated.

Before the conclusion of the proceedings, the respondent waived all claim to the mortgage note of $4,175, which represented the obligation of the company for repairs, and which had been given him as security for the antecedent indebtedness of Mr. Carpenter to him, and which had been indorsed by Mr. Carpenter. To this extent the respondent seems to have admitted that he had received a preference. He insists, however, that his mortgage is valid to the extent of $1,500 advanced by him as a present consideration, and also that his possession was a valid one under the laws of Massachusetts. I am, however, led to conclude that the possession of the respondent was merely colorable, and did not amount to an actual bona fide possession called for by the statute. Section 70a (4), (5);[1] Clark v. Williams, 190 Mass. 219, 76 N. E. 723; Dempsey v. Gardner, 127 Mass. 381, 31 Am. Rep. 389; In re Waite-Robbins Motor Co., 192 Fed. 47, decided by the honorable District Judge in this district; In re McDonald (D. C., Mass.) 21 Am. Bankr. Rep. 358, 23 Am. Bankr. Rep. 51, 173 Fed. 99.

I also am led to conclude that the attempt to include this whole business as security for the respondent amounted to a sale, and was a violation of chapter 415 of the Acts of 1903 of this commonwealth, known as the "Sales in Bulk Act." Section 67e provides that all incumbrances, etc., by a debtor of his property within four months prior to the filing of the petition against him, etc., "which are null and void as against the creditors of such debtor by the laws of the state, territory, or district, in which such property is situated, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt." See In re McDonald, supra.

Wm. Charalk, for complainant.
David J. O'Connell, for respondent.

[1] Act July 1, 1898, c. 541, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451).

DODGE, District Judge. Adjudication in this case was on July 13, 1909, under a creditor's petition filed May 26, 1909.

The chattel mortgage here in question was given March 2, 1909. It purported to secure the payment of $5,675 in all, $4,175 of which is now conceded to have been pre-existing indebtedness of the bankrupt to the mortgage. That the remaining $1,500 represents an actual loan of that amount by the mortgagee to the bankrupt, made when the mortgage was given or afterward, and as part of the consideration for it, is not in dispute under this petition for review.

|1] The mortgage was never recorded. Whether it can be held good for $1,500 as against the trustee, or not, depends upon the question whether the mortgaged property had been delivered to and retained by the mortgagee before the trustee's rights in the bankrupt's property accrued. Unless the property was delivered to and retained by the mortgagee, the mortgage has no validity against a person other than the parties to it. Rev. Laws Mass. c. 198, § 1. The trustee cannot be regarded as a "party" to it. Re Hurley (D. C., Mass.) 26 Am. Bankr. Rep. 434, 185 Fed. 851, 854; Clark v. Williams, 190 Mass. 219, 223, 76 N. E. 723.

[2] The mortgage purported to cover all the bankrupt's fixtures and stock in trade, consisting of millinery, millinery supplies, hair goods, shell goods, in its store No. 380–382 Boylston street, Boston. It also recited an agreement between the parties that the bankrupt might dispose of the stock in trade in ' due ' and ordinary course of trade, provided that what should be so disposed of was to be replaced by goods of equal value, the mortgage to apply to such after-acquired goods.

The mortgagee was at the store when the mortgage was given. He contends that the mortgaged property was then delivered to him and since retained by him. The trustee denies that there was any such delivery or retention. A fuller and more specific finding of the facts bearing on this question than appears in the referee's certificate seems to me desirable. The entire evidence before the referee has been transmitted with his certificate. It relates in great part to questions not raised by the petition for review, but from it I find the facts now material as follows:

(1) The bankrupt held a lease of the premises which had some eight years to run. This it assigned to the mortgagee, also on March 2, 1909. The mortgagee on the same date executed a written agreement, which, after reciting the loan of $5,675 and the assignment of the lease as partial security therefor, provided for a reassignment of the lease by him upon repayment of the loan. It does not appear that he ever had or claimed possession and control of the leased premises under the lease thus assigned, except as below stated, and, as the referee has found, he never paid any rent.

(2) On March 2, 1909, when the mortgage, assignment of lease, and agreement were executed, the mortgagee, then present in the store, walked through it with the bankrupt's representatives. The fixtures and other property mortgaged were indicated, and he stated that he took possession of them.

(3) It was at the same time agreed between him and the bankrupt's representatives that Minnie Mazur, then employed in the store by the bankrupt as stenographer, should be appointed as the mortgagee's agent and keeper. He was told that she had the keys, and opened and closed the store at morning and night. He asked her if she would act as agent. The bankrupt's representatives told her it was all right, and she agreed. He gave her some keys, telling her "she was supposed to hold the keys." She put them in her pocketbook and thereafter retained them. The mortgagee claims that he explained to her that a mortgage on the property had been given and she was to act as agent for the mortgagee. This she denies, and I do not think it proved that she fully understood at the time that there was a mortgage or that she was so to act as keeper.

(4) On March 13th the mortgagee came to the store with a paper previously prepared by him and got Miss Mazur to sign it. The paper, marked "Exhibit 7," is in evidence. It purports to acknowledge her receipt from him of the fixtures and stock in trade described in the mortgage, and to be an agreement on her part to hold them for the mortgagee and to surrender them to him or his agents, on demand, without expense or charge to him for storage or keeping. This she signed without reading it, but with the knowledge and consent of the bankrupt's representatives. I do not think it proved that she knew when she signed it that the mortgage had been given and that she was to be regarded as in possession of the store or its contents. She was in the store daily from and after March 2d. The keys given her she kept but did not use.

(5) Between March 2d and May 24th the store remained open to the public for business as before March 2d. The bankrupt continued to conduct its business there as before, without ostensible change. It was a retail business, in the course of which goods from the stock in trade referred to were sold from day to day and new goods of a like kind added to them, without separation, as had been done before March 2d. The bankrupt's employés, through whom the business was done, remained the same and continued in the bankrupt's employ as before. No more actual control over the business, the fixtures, and stock in trade, or the proceeds of sale therefrom, or the payment for new goods added, was exercised by the mortgagee or by Miss Mazur after March 2d than before.

(6) On May 24th, in a suit brought against the bankrupt in the Massachusetts courts, stock in trade and fixtures then in the store were attached, and a keeper put in charge of them by the deputy sheriff making the attachment. The mortgagee thereupon, on the same day, went to the store with a man having no connection with the bankrupt or its business, informed Miss Mazur that he was to replace her as agent and keeper, and left him in the store. On the following day the mortgagee notified the deputy sheriff in writing that all the fixtures and chattels in the store were mortgaged to him, that he had taken possession of them before the attachment, and that his possession had since continued uninterrupted. After the attachment the store was closed and no further business done. The per-

son substituted as above for Miss Mazur by the mortgagee and the sheriff's keeper remained together in the store until May 26th.

(7) On May 25th the mortgagee served notice on the bankrupt that he intended to foreclose his mortgage for breach of condition. The notice recited that the mortgaged property was in his possession. This notice was recorded on May 26th, at 11 minutes past 11 a. m.

(8) On May 26th, at 9:20 a. m., the creditors' petition in this case was filed. The deputy sheriff thereupon withdrew his keeper. The mortgagee's representative above mentioned remained in the store until the mortgaged property was sold as stated below.

(9) On May 27, 1909, on application by the petitioning creditors, this court enjoined the mortgagee from disposing of any of the property belonging to the estate until a further order of the court. On June 9, 1909, the petitioning creditors and the mortgagee filed a stipulation in the case whereby, after reciting that the mortgagee, claiming possession as such, had custody of the property, and that all parties interested would be benefited by its conversion into cash because of its perishable nature, they agreed that the above injunction should be vacated, the property converted into cash forthwith, without prejudice to the rights of either party, and that the proceeds, less the expenses of selling and protecting the property, should be deposited by the mortgagee, in his name as trustee, subject to the court's final order upon the rights of the respective parties therein. The property was thereafter sold and the proceeds deposited accordingly.

From the facts as above found, I am unable to conclude that there was such delivery and retention by the mortgagee as is necessary, under the Massachusetts statute above cited, to make such a mortgage valid without record, as against others than the parties. The parties went through the form of making a delivery of so much of the stock in trade as was in the store on March 2d; but, as in Moors v. Reading, 167 Mass. 322, 45 N. E. 760, 57 Am. St. Rep. 460, the arrangements they made on that day regarding its custody were with the obvious purpose, or at any rate with the effect, of enabling the mortgagor to carry on its business in the usual manner, without exciting suspicion that its goods had been transferred. None of the goods were articles of great bulk and weight, nor were they in a place access to which could be supposed under the control of that employé of the mortgagor whom the mortgagee undertook to make his agent for the purpose of retaining possession, as in Wright v. Tetlow, 99 Mass. 397, even if it be assumed that Miss Mazur distinctly understood that she was to hold possession of them under the mortgage and agreed to do so. There was no attempt to keep the goods originally mortgaged distinct from those acquired after March 2d, and no subsequent delivery of any of those after acquired, which were mingled indiscriminately with those in the store on March 2d. To hold such possession as Miss Mazur can at best be held to have exercised a retention of possession by the mortgagee would be, as was said in Moors v. Reading, above cited (167 Mass. 326, 45 N. E.

760, 57 Am. St. Rep. 460), to enable parties to practice the very fraud which the statute as to unrecorded mortgages of personal property was intended to prevent.

[3] The mortgagee could take no possession of the goods while the deputy sheriff had possession of them under the attachment made March 24th, whether or not the suit in which the attachment was made was really for the benefit of Aylies, treasurer of the bankrupt company, and whatever his relations to or previous dealings with the mortgagee and the president of the bankrupt company.

[4] The deputy sheriff's possession while it lasted was exclusive, and it continued until the filing of the petition in bankruptcy under which there has been adjudication. I must hold that no possession taken after the filing of the petition can avail the mortgagee. State Bank v. Cox (C. C. A., 7th Cir.) 16 Am. Bankr. Rep. 32, 143 Fed. 91, 93, 74 C. C. A. 285; Cruchet v. Red Rover Co. (C. C., Mass.) 18 Am. Bankr. Rep. 814, 155 Fed. 486; Clay v. Waters (C. C. A., 8th Cir.) 24 Am. Bankr. Rep. 293, 178 Fed. 388, 394, 101 C. C. A. 645.

The referee was of opinion that the mortgage was void under the "sales in bulk" act of Massachusetts. Acts 1903, c. 415. I am not prepared to agree with this opinion, in view of Wasserman v. McDonnell, 190 Mass. 326, 76 N. E. 959. But for the other reasons above stated I must hold the mortgage invalid as against the trustee.

The referee's order is therefore approved and affirmed.