## McPHERSON v. MASSACHUSETTS TRUST CO.

(District Court, D. Massachusetts. July 27, 1923.)

No. 1794.

1. **Bankruptcy ⬦184(1)—Possession of warehouseman held insufficient to support chattel mortgage.**

Where motor cars bought by bankrupt, for which a creditor held as security warehouse receipts issued by a warehouse company having the same officers and occupying the same building as bankrupt, were moved about by bankrupt and exposed for sale in its salesroom, without sufficient marks to indicate to the general public that they did not belong to it, they were not so exclusively in possession of the warehouse company as to constitute the warehouse receipts valid documents of title, or to give the creditor constructive possession.

2. **Bankruptcy ⬦166(4)—Transfer of property held to constitute preference.**

A creditor which took property from a bankrupt with knowledge that it had just been refused renewal of a loan of $75,000 *held* to have had reasonable cause to believe that the debtor was insolvent, and the transfer *held* a voidable preference.

In Equity. Suit by Henry S. McPherson, trustee in bankruptcy of the Chandler Motors of New England, Incorporated, against the Massachusetts Trust Company. Decree for complainant.

Joseph B. Jacobs, of Boston, Mass., for plaintiff.
Guy A. Ham, of Boston, Mass., for defendant.

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LOWELL, District Judge. This was a bill in equity brought by the trustee in bankruptcy of the Chandler Motors of New England, Incorporated, to procure the return of certain motor cars, the transfer of which to the defendant was alleged to constitute a preference.

The bankrupt was a corporation engaged in the business of selling motor cars. The cars were shipped to Boston and a sight draft was drawn, which, together with the bill of lading, was sent to the Massachusetts Trust Company. The bankrupt then went to the Massachusetts Trust Company and procured from it a loan of 80 per cent. of the value of the cars covered by the bill of lading. The bankrupt gave its notes, each one of which was secured by a warehouse receipt issued by the Beacon Storage Company on a single car. The loans were demand loans, and interest was charged on them. The draft was paid and the bill of lading given to the bankrupt. The cars were then taken from the railroad and driven to the bankrupt's place of business at 712 Beacon street.

The Beacon Storage Company had a place of business in the same building as the bankrupt. It issued a nonnegotiable warehouse receipt for each car which was brought to the building by the bankrupt as above described. The warehouse receipts were given to the Massachusetts Trust Company and were held by them in their vaults as security for the demand notes.

The Beacon Storage Company was a warehouse company incorporated under the laws of Massachusetts. Its officers were also officers of the bankrupt company. Mr. Whittaker, the vice president of the defendant company, testified that he did not know who the officers of the Beacon Storage Company were, but he knew they were connected with the bankrupt company. There was evidence that signs, "Beacon Storage Company," were on many of the interior doors of the building occupied by the bankrupt company, in connection usually with the sign, "Chandler Motors Company." There was no sign of the Beacon Storage Company on the outside of the building.

The evidence showed that the cars covered by the warehouse receipts were usually kept on the fourth floor of the building, but that they were also shown in the salesroom. There was nothing to indicate the ownership of the cars, except a small pink tag which was attached to the radiator rod under the hood of the cars. The defendant company knew that the bankrupt was engaged in the business of selling cars, and knew that certain of these cars covered by the warehouse receipts were offered for sale. The evidence shows that after a car covered by a warehouse receipt was sold, the bankrupt corporation would pay the defendant the amount of the note represented by that car.

A statement of the condition of the bankrupt's business on August 1st was given to the defendant. It showed that there was deficit of $37,000 in the quick assets. This was the first time that there had been such a deficit. In the first week of September the defendant became aware that the bankrupt was having trouble in renewing with the International Trust Company an unsecured loan for $75,000. Shortly before September 19th the trust company learned that the

International Trust Company had refused to renew the loan. It then gave orders that the cars covered by the warehouse receipts should be taken from the premises at 712 Beacon street. This was done, and they were stored with the Boston Storage Warehouse Company and afterwards sold. It was agreed that the cars so taken were of the value of $16,024. Shortly after the cars were taken away, the bankrupt made a general assignment for the benefit of creditors. It was adjudicated bankrupt on a petition filed October 19th.

[1] The question in the case is whether the transfer of the cars which was allowed by the bankrupt constituted a preference or not. The defendant strongly urged that the cars were always in the possession of the defendant, and therefore that it did not constitute a preference to remove them from the building at 712 Beacon street. The cars were never in the actual possession of the defendant, but it contends that the warehouse receipts were sufficient under the law to give it constructive possession.

If the cars had been always in the undoubted possession of the Beacon Storage Company, the defendant's contention would be correct. However, it was in evidence that the cars were moved about from time to time by the bankrupt and were exposed for sale in the salesroom with not sufficient indication to the general public that the cars did not belong to the Chandler Motors Company.

I find and rule that the Beacon Storage Company did not have such exclusive possession of the motor cars as would be required to constitute the warehouse receipts valid documents of title. 1 Black, Bankruptcy (3d Ed.) § 316; Williston, Sales of Goods, § 329; Security Warehousing Co. v. Hand, 143 Fed. 32, 74 C. C. A. 186; Id., 206 U. S. 415, 27 Sup. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789; In re Harrington (D. C.) 212 Fed. 542; In re Garcewich, 115 Fed. 87, 53 C. C. A. 510; Flanders Motor Co. v. Reed, 220 Fed. 642, 136 C. C. A. 250; In re Hallbauer (D. C.) 275 Fed. 126; Industrial Finance Corp. v. Capplemann (C. C. A.) 284 Fed. 8; Moors v. Reading, 167 Mass. 322, 45 N. E. 760, 57 Am. St. Rep. 460; Guaranty Security Co. v. Eastern S. S. Co., 241 Mass. 120, 134 N. E. 364; Boice v. Finance & Guaranty Corp., 127 Va. 563, 102 S. E. 591, 10 A. L. R. 654; Valley Natl. Bank v. Frank, 12 Mo. App. 460.

[2] The question remains whether at the time the cars were transferred the defendant had reasonable cause to believe that a preference would be effected by the transfer. I am satisfied on the evidence that the fact that they knew that so large an unsecured loan as $75,000 was being called gave them reasonable cause to believe that the corporation was in serious difficulties and would be insolvent, and that by taking the cars they would get a greater percentage of their debt than other creditors of the same class.

I refuse the defendant's requests except so far as they are covered by the above opinion.

Let a decree be entered that the defendant pay to the plaintiff the sum of $16,024.