MARTIN STODDARD *v.* WHEELER MARTIN.

A bet on the event of an election held a void contract.

THIS was an action on the case, in which the plaintiff declared for money had and received, and also, that the defendant, at Providence, on the 26th day of October, 1826, by his certain order or check, of that date, by him signed, for value received, requested the cashier of the Eagle Bank in Providence, to pay the plaintiff, or bearer, fifty dollars. And the plaintiff averred, that on the 5th day of March, 1827, he presented said check to said cashier, at said bank, who then and there refused to pay the same, of which the plaintiff then and there, on the same day, gave the defendant notice, whereby the defendant became liable, &c.

The jury found, that on the said 26th day of October, the plaintiff and defendant made the following *bet*, to wit: the plaintiff bet the defendant fifty dollars, that Ashur Robins would be elected a senator to the United States senate, at the ensuing senatorial election, and the defendant bet that the said Ashur Robins would not be so elected. They further found, that the plaintiff and defendant thereupon both

drew their respective checks for the amount of fifty dollars each check, and delivered both of said checks to a stakeholder, to be delivered to the party who might win the bet; that the check mentioned in the plaintiff's declaration was the same check which was signed by the defendant for the consideration aforesaid, and was delivered to the plaintiff by the said stakeholder after the termination of the said senatorial election, the said Robins having been elected. The jury also found, that at the time of making the said bet, neither the plaintiff nor the defendant were members of the legislature of the state, by whom the election was made, but that they were both inhabitants and citizens thereof. The jury further found, that the plaintiff won said bet; and that if, upon the above facts, the court were of opinion, that the law was with the plaintiff, they found for the plaintiff fifty-four dollars and sixty-two cents, and costs; but if the court, upon the above facts, were of opinion, that the law' is against the plaintiff, they then found for the defendant his costs; which said special verdict was accepted by the court; and afterwards the question of law raised by said special verdict, came on to be argued before the court, and after the argument, the opinion of the court, that the defendant recover his costs, was delivered by

EDDY, C. J. It is admitted that by the common law, some wagers are legal, and may be enforced in a court of justice. This admission is made with regret in many of the modern decisions; and were the question *res integra*, there is little doubt that all wagers would now be declared illegal. Among wagers deemed illegal, are those against sound policy, or of immoral tendency, which may affect the feelings, interest or character of a third party, or tend to disturb the peace of society.

Stoddard *v.* Martin.

In the case of *Gilbert and Sykes*, (16 East, 156,) an action on a wager on the life of Bonaparte, Lord Ellenborough says: "Wherever the tolerating any species of contract, has a *tendency* to produce a public mischief or inconvenience, such a contract has been held void." And after, in nearly the same words, "If a contract have a *tendency* to a mischievous and pernicious consequence, it is void." And again, "Where the subject-matter of the wager has a tendency injurious to the interests of mankind, I have no doubt in saying that it ought not to be sustained." In the same case Le Blanc, J. says, "It has often been lamented, that actions upon idle wagers should ever have been maintained in courts of justice. The practice seems to have prevailed before that full consideration of the subject which has been had in modern times. And it is now clearly settled, that the subject-matter of a wager must at least be perfectly innocent in itself, and must not tend to immorality or impolicy." In the same case, Bailey J., speaking of the wager then under consideration, says, "It gives to one person a *pecuniary interest* in the violent death of another, by whatever means procured." "Shall it be allowed to a subject to say," says Lord Ellenborough, in the same case, "that the moral duties which bind man to man are in no hazard of being neglected when put in competition with individual interest?"

If we apply these principles to the question before us, there can be little doubt what the decision ought to be. The wager was on the election of a certain person, by the general assembly, to the office of senator in congress. Did it not give to the plaintiff a *pecuniary interest* in the election of that person; and to the defendant an equal pecuniary interest in preventing that election? "And shall it be allowed to" either party, or any one else "to say," that in this case "the moral duties which bind man to man," or to com-

munities of men, " were in no hazard of being neglected, when " thus " put in competition with individual interest ? "

If a contract have a *tendency* to a mischievous conse-quence, it is void. What is the tendency of a wager, on an approaching election ? Is it to produce peace, harmony, fair dealing ? Or is it not rather to produce clamor, misrepre-sentation, abuse, discord ; the exertion of improper influence ; of intrigue, bargain and corruption ; of the use of *means,* by each party, fitted to the *end,* that is, the winning of the bet ? And is not this tendency greater, in proportion to the amount of the wager, and the influence of the parties to the wager ? To say that because the parties to a wager are not members of the legislature, by whose vote the wager will be decided, therefore the wager can have no influence on the members of the legislature, is to say, that the power and influence of individuals out of the legislature, can in no case affect the vote of that legislature, however great the power and influ-ence of those individuals may be. Which is to say what is in itself absurd, what daily experience teaches to be false, and what a moment's reflection must convince every one is not and cannot be true. If the tendency of the wager, in the case before us, be thus, then is that tendency immoral ; for no one, it is believed, will so far hazard his own reputa-tion for correct moral feeling, as to undertake to reconcile misrepresentation, slander, intrigue, or corruption, with the principles of morality. We might then safely say, it is con-trary to sound policy, because immoral. But it is contrary to sound policy in a more important point of view. More im-portant, because the immoral tendency, and pernicious bear-ing on our free institutions, is more extensive and injurious. The strong hold of freedom in our country, is in the freedom of our elections. Destroy this, and our freedom is at an end. Whatever tends to this destruction, in the remotest degree,

Stoddard *v.* Martin.

ought to be resisted here, with a determination that admits of no compromise. Wagers on elections, whether by the people or the general assembly, have this tendency directly. And this tendency, in a given case, is in proportion to the interest at stake, and the influence of the parties to the wager. To say that a wager can have no influence in such a case, is to say, either that man has ceased to regard his own interest, or that interest has ceased to influence man's conduct. This interest and influence may result in the grossest corruption. It is enough for the decision of this case to show, that a wager on an election has this tendency. Can it be necessary to ask, whether, in a free country, a contract which has a tendency to destroy freedom of elections, and produce corruption, is consistent with sound policy? In *Vescher* v. *Yates*, (11 Johns. 31,) which was an action against a stakeholder, of a bet on an election, Kent, C. J., in delivering the opinion of the court, says: " We choose rather to place the decision of this case upon those great and solid principles of policy which forbid this species of gambling, as tending to debase the character, and impair the value of the right of suffrage."

There is one other point of view in which this case may be considered, and in which this wager will appear equally indefensible. If the feelings, interest, or character of a third party may be affected by a wager; or if it tend to disturb the peace of society, it cannot be sustained. (*Da Costa* v. *Jones.*) If the election in question had taken place by a majority of one vote, and that one vote had been procured by bribery, would the wager have been fairly won? And if not won, ought not the defendant to be permitted to show it, and avoid the payment? But would a court of law inquire into a transaction, so full of interest and feeling to third parties, in order to decide an " idle wager ? " No, nor would

1*

it comport with sound policy to suffer such a question to be discussed in a court of law, on a mere wager, independent of the feelings or interest of third parties. In the case of *Da Costa* v. *Jones*, (Cowp. 720,) Lord Mansfield, stating as a case, a wager that an unmarried woman has had a bastard, says, " Would you try that ? Would it be endured ? Most unquestionably it would not. Because it is not only an injury to a third person, but it disturbs the peace of society ; and the party to be effected by it would have a right to say, how dare you bring my name in question ? " With how much more propriety might the parties charged with corruption in the case above supposed, put the same question ! And how much greater would be the tendency in that case, to disturb the peace of society !

In the case of *Bunn* v. *Riker*, (4 Johns. 428,) which was a wager on the election of the governor of the state, Van Ness, J. says, " It may involve an inquiry into the validity of the election of the present chief magistrate. In answer to the objection that the certificate of the canvassers would be conclusive, he says, "It is enough that this wager may give birth to such a question, to pronounce it to be repugnant to the dictates of good policy." " It is a discussion calculated to endanger the peace and tranquillity of a community." These principles are fully recognized in the case of *Lansing* v. *Lansing*, (8 Johns. 454,) which was a similar bet, made after the polls were closed. Say the court. " This case falls within the principle laid down in *Bunn* v. *Riker*, that a bet, involving an inquiry into the validity of the election of governor, was void, on principles of policy."

With these principles, as well as those quoted from the other authorities, whether binding on this court as authorities or not, we fully concur, and have no hesitation in saying, that all bets on elections, whether by the people or the general

Stoddard *v.* Martin.

assembly, and all bets on judicial decisions, are of immoral tendency, against sound policy, and ought not be sustained, especially in this state, where all our officers, judicial as well as others, are of annual appointment.