GEORGE W. FLAGG *vs.* JOHN GILPIN.

Agreement between a stockbroker and a customer by which the former, on a margin furnished by the latter, was to receive orders to buy stock and to sell it, the parties to settle by paying reciprocally to each other the difference between the market price at date of buying order and at date of sale, no stock to be actually purchased and delivered.

*Held*, a wagering contract and void, though not forbidden by any statute of the State.

ASSUMPSIT. On demurrers to pleas.

*Providence, April* 29, 1890. DURFEE, C. J. This is *assumpsit* by the plaintiff, a broker at Newport, to recover money alleged to be due to him from the defendant under an agreement whereby the defendant employed the plaintiff as broker to buy shares of stock for him from or through the Public Grain and Stock Exchange of New York, and deliver to him the certificates thereof, or to sell them again for him, according as he might direct, the plaintiff advancing the money required therefor, or the money required therefor beyond a margin furnished by the defendant, the defendant on his part agreeing to reimburse the plaintiff. The declaration alleges purchases and sales of divers shares of stock in pursuance of said agreement, resulting in losses to the plaintiff which, together with his commissions, amount to $1,449.37 beyond any margin furnished or any payment made by the defendant, for which amount this action is brought. The defendant has pleaded four special pleas, which have been demurred to.

The defendant pleads, in the first of said pleas, "*actio non,* because he says that it was the intent and understanding of the

plaintiff and the defendant not actually to purchase and deliver nor to sell and deliver the stocks designated in the said declaration, nor any stock, but only to speculate on the rise and fall of the prices of stocks, and to pay each other reciprocally the difference between the market price of said stocks at the time when the defendant should order them respectively of the plaintiff, and their market price at the time when the defendant should order, or consent to, or be obliged to submit to, the sale of the same : and so that if said second price should be greater than the first, the plaintiff should pay said difference to the defendant; and if said second price should be less than the first, the defendant should pay the difference to the plaintiff, and without actually buying or selling any stock in any case." The three other pleas differ from the first in certain changes and additions that do not materially affect the question which has been treated by the parties as the question raised by the demurrers, and we therefore do not state them.

The case alleged in the pleas is not the usual case of a wagering contract. The usual case is one where two parties, either directly or through a broker, enter in form into a contract, the one to sell and the other to buy some commodity to be delivered and paid for at a future time, with an understanding that when the time comes it shall neither be delivered nor paid for, but only the difference between the contract price and the then market price shall be paid, by the seller to the buyer if the price has risen, by the buyer to the seller if it has fallen. The case alleged in the pleas is one where it was the understanding of the parties, in the beginning, that the defendant should give orders to the plaintiff as broker, from time to time, to buy for him shares of stock, and that the plaintiff, on receiving the orders, without buying the shares, should be regarded as having bought them, and as holding them for the defendant until he should receive the defendant's order or consent to sell them, or until the defendant under the understanding should be obliged to submit to his selling them, or rather to his being regarded as if he had sold them, at which time the difference between the then market price and the market price as it was when the orders to buy were given should be paid by the plaintiff to the defendant if the price had risen, and by the defendant to the plaintiff if it had fallen. The counsel have argued this case as if

it were the same as the case first described. We do not see that there is any essential difference; for in the one case as in the other the cause of action is really a wager masked under the simulation of a sale, or of a sale and a resale. We shall treat them as the same.

Formerly in England wagers were regarded as valid at common law if not repugnant to decency, morality, or public policy. In this country they have been regarded as valid at common law in some of the States, while in others they have been treated as having no validity. In *Love* v. *Harvey*, 114 Mass. 80, the Supreme Judicial Court of Massachusetts held that the common law on the subject had never been used or approved in that State, and that the same was true of other New England States. "It is inconsistent alike with the policy of our laws," say the court, " and with the performance of the duties for which courts of justice are established, that judges and juries should be occupied in answering every frivolous question upon which idle or foolish persons may choose to lay a wager." In *Stoddard* v. *Martin*, 1 R. I. 1, decided in 1828, this court held a bet on an election to be void as against public policy, but it has never been decided that in this State all bets or wagers are invalid. We have statutes that make certain bets or wagers void, but no statute that covers the case at bar. There are now in England, and also in many of the States of this country, statutes by which all contracts by way of gaming or wagering are rendered null and void. Of course under these statutes contracts like that in suit and contracts like that first above described would be invalid.

Numerous cases are cited by the defendant's counsel in which contracts like that first above described have been decided to be void. It is difficult to determine in some of them how far the courts are influenced by statute, or how far they decide them simply at common law. There are many cases, however, in which such contracts have been held to be invalid at common law independently of any statute. The following are of that description: *Rumsey* v. *Berry*, 65 Me. 575; *Brua's Appeal*, 55 Pa. St. 294; *North* v. *Phillips*, 89 Pa. St. 250; *Williams* v. *Carr*, 80 N. Car. 294; *Gregory* v. *Wendell*, 39 Mich. 337; *Rudolf* v. *Winters*, 7 Neb. 125; *Beadles, Wood & Co.* v. *McElrath*, 85 Ky. 230. The

ground of decision in these cases is, that such contracts are against public policy because they tend to unsettle the natural course of trade, and tempt the parties to them to work for a rise or fall in the prices of the commodities on which their wagers are laid, without regard to actual values, and by methods calculated to promote their own profit at the expense or ruin of others, without reciprocity of benefit. And besides these evils there are others, more immediate to the parties, culminating from time to time in loss of fortune and character, defalcations, crime, and domestic misery, evils which, though they do not always follow, yet follow so often that they have not been overlooked by the courts. *Brua's Appeal*, 55 Pa. St. 294, 298, 299; *Cunningham* v. *National Bank of Augusta*, 71 Ga. 400; *Mutual Life Ins. Co.* v. *Watson*, 30 Federal Reporter, 653, 656.

There are also many cases in which such contracts, though invalid by statute, have been treated by the courts as likewise invalid at common law. *Irwin* v. *Williar*, 110 U. S. 499, 507; *Embrey* v. *Jemison*, 131 U. S. 336; *Hawley* v. *Bibb*, 69 Ala. 52; *Cockrell* v. *Thompson*, 85 Mo. 510; *Third National Bank* v. *Harrison*, 10 Federal Reporter, 243; *Melchert* v. *American Union Telegraph Co.* 11 Ib. 193 and note on p. 201; *Bryant* v. *Western Union Telegraph Co.* 17 Ib. 825; *Matter of Chandler*, 13 Amer. Law Register N. S. 310; *Sawyer* v. *Taggart*, 18 Ib. 222 and notes on pp. 229, 258. It is said in *Irwin* v. *Williar*, 110 U. S. 510, that "generally in this country all wagering contracts are held to be illegal and void as against public policy." And this doctrine was said in *Embrey* v. *Jemison* to have the approval of the court. No case has been cited, and we have seen no case in the reports of any of the States, which holds that any such contract, as between the original parties to it, has any validity.

No objection is taken to the pleas in matter of form. Our conclusion is, that the contract disclosed thereby must be regarded as void as against public policy. The demurrers are therefore overruled and said pleas are sustained.

*Nicholas Van Slyck & William P. Sheffield, Jun.,* for plaintiff.
*Francis B. Peckham,* for defendant.