MARDEN v. PHILLIPS et al.

(District Court, D. Massachusetts.   July 11, 1900.)

No. 1,113.

1. GAMBLING CONTRACTS—CHATTEL MORTGAGES—VALIDITY—BANKRUPTCY.
    A bill of sale intended as security for a loan of money to be used in dealing in differences, in the profits of which the vendee is to participate, is invalid as against the trustee in bankruptcy of the vendor.

2. SALES—DELIVERY—EVIDENCE—VALIDITY AGAINST TRUSTEE IN BANKRUPTCY.
    Where, after the execution of a bill of sale as security for a loan, the vendor continues in possession and does business as before until adjudicated a bankrupt, and the bill of sale is not recorded, the vendee cannot claim title as against the trustee in bankruptcy of the vendor.

Sherman L. Whipple and Edward W. Goding, for complainant.
Williams & Copeland, for defendants.

BROWN, District Judge.   The bill of sale under which the defendant claims title to the goods in question was admittedly given as a mere security for money loaned by Phillips to the bankrupt.   At the date of the loan the bankrupt was solvent.   The money was borrowed by the bankrupt for the purpose of gambling in stocks.   The bankrupt testifies that the transactions were what are "commonly known as 'bucket-shop transactions.'"   I think it clear, upon the evidence, that the purpose for which the money was borrowed was for a mere dealing in differences, and that no actual delivery of shares was intended. The master reports:

"I think it may fairly be inferred from all the testimony that Phillips understood that the bankrupt was not purchasing stocks outright for investment, but was in a speculation through Jones, who had been introduced to him by Phillips, and with the nature of whose business Phillips was entirely conversant; and, furthermore, Phillips testified that he had assisted the bankrupt several times previously in similar speculations."

Furthermore, the bankrupt testified that he told Phillips that, if Phillips would loan him the money to put into the speculation, he would "divvy" the profits with Phillips.   As the note given by the bankrupt to Phillips for the loan was merely a demand note, on which no demand has ever been made, and as, upon his own statement, it does not appear that Phillips was to receive any compensation for his loan, I think that the bankrupt's testimony on this point is much more probable than Phillips' statement that he had no interest in the speculation.   I fully agree with the master's opinion that Phillips knew the nature of the dealings of the bankrupt, and I find, also, as a matter of fact, that the loan was made on condition that Phillips should share in the profits of a mere wagering dealing in differences, to which the money loaned was to be applied.   It is improbable that Phillips loaned money for a speculation in which he was interested, without learning the nature of the dealings.   It follows that the bill of sale given as a security is invalid as against the trustee in bankruptcy. Irwin v. Williar, 110 U. S. 499, 4 Sup. Ct. 160, 28 L. Ed. 225; Flagg v. Gilpin, 17 R. I. 10, 19 Atl. 1084; Bibb v. Allen, 149 U. S. 481, 13 Sup. Ct. 950, 37 L. Ed. 819; Embrey v. Jemison, 131 U. S. 336, 9 Sup.

Ct. 776, 33 L. Ed. 172; Love v. Harvey, 114 Mass. 80; Hanauer v. Doane, 12 Wall. 342, 20 L. Ed. 439.

I am furthermore of the opinion, upon the whole evidence, that no possession of the stock was taken and retained by Phillips prior to January 30th when the goods were removed to Woburn. In the original depositions of Gardner, MacDonald, Romsey, and Phillips, taken on March 1st or prior thereto, no reference is made to a key, or to locking up any part of the goods. Phillips testified that he made a confidential arrangement with Romsey, the bankrupt's clerk, to look out for his (Phillips') interests, but Romsey was not to let MacDonald know that he represented Phillips. This is inconsistent with evidence given at a later date that Romsey had the key to the back room, and that MacDonald only had access thereto with Romsey's consent. Romsey, professing to give a full account of the transaction, does not testify originally that he was put in charge for Phillips, or that he had a key. MacDonald testified originally that after the execution of the bill of sale he did business without change, and that he knew of no arrangement between Phillips and Romsey until January 20th. The testimony as to the key is, in my opinion, inconsistent with the original testimony of these witnesses, and is of little weight. As the bill of sale was a mere security, and was not recorded, and as no possession was taken and retained prior to January 30, 1900, the case seems to fall within Drury v. Moors, 171 Mass. 252, 50 N. E. 618; Moors v. Reading, 167 Mass. 322, 45 N. E. 760. See, also, In re Sheridan (D. C.) 98 Fed. 406; Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779. The decree will be for the complainant.