ROBINSON, J.,
with whom INDEGLIA, J., joins, concurring in part and dissenting in part.
I am pleased to be able to concur with the majority’s opinion with respect to the second question certified to this Court by the United States Court of Appeals for the First Circuit — i.e., that a clause in an annuity that purports to make the annuity incontestable from the date of its issuance precludes the maintenance of an action based on the lack of an insurable interest. However, I must respectfully dissent from the majority’s opinion with respect to the first certified question. After an extensive review of this Court’s precedent, it is my firm belief that, if the owner and beneficiary of an annuity with a death benefit like the one at issue in this case is a stranger to the annuitant, the annuity is indeed infirm for want of an insurable interest. In my judgment, such an annuity would be an illegal wagering contract and, consequently, void ab initio.
I concede that, as a matter of both statutory and common law, the annuity at issue in this case cannot be considered the equivalent of a life insurance contract; the two are indeed “separate and distinct.” Thus, I agree with the majority that the annuity cannot simplistically be treated as our precedent and the General Laws have treated life insurance contracts. However, it is my firm opinion that the focus of this case should not be on asking whether or not the annuity at issue, which contains the “Double Enhanced Death Benefit,” is definitionally distinct from a life insurance policy; rather, the focus should be on addressing whether or not the “Double Enhanced Death Benefit” makes this annuity a wagering contract which this Court should refuse to enforce as a matter of venerable and sound public policy.[1] While the majority does address whether this annuity is a wagering contract, I simply cannot assent to its analysis or its ultimate conclusion that this annuity is not a wagering contract.
Certain wagering contracts have long been regarded as detrimental to society— the spread of life insurance in England. “led to widespread gambling by the middle class on the lives of prominent people” and “attempts] to hasten * * * payouts when possible,” resulting, in 1774, in the requirement of an insurable interest in the life of the insured. Maria Fleisher, Stranger Originated Life Insurance: Finding a Modem Cure far an Age-Old Problem, 41 Cumb. L. Rev. 569, 571 (2011). Likewise, courts in this country have long held that a contract for insurance upon the life of another requires an insurable interest in the person whose life is insured; the insurable interest requirement makes it “less likely tha[t] criminals at large [will] attempt to compass [the insured’s] death.” Grigsby v. Russell, 222 U.S. 149, 155, 32 S.Ct. 58, 56 L.Ed. 133 (1911); see also Cronin v. Vermont Life Insurance Co., 20 R.I. 570, 571-72, 40 A. 497, 497 (1898).
*808 Furthermore, the United States Supreme Court has stated that a contract which is a “mere wager” on the death of another “ha[s] a tendency to create a desire for the event. They are, therefore, independently of any statute on the subject, condemned, as being against public policy.” Warnock v. Davis, 104 U.S. 775, 779, 26 L.Ed. 924 (1881). Our Court has also consistently taken the position that certain wagering contracts are void; in Cronin, 20 R.I. at 572, 40 A. at 497 (as the majority recognizes), we stated that “a purely speculative contract on the life of another is * * * objectionable, on the grounds of public policy, * * * and such a contract may properly be held to be void.”[2] See also Winward v. Lincoln, 23 R.I. 476, 492, 51 A. 106, 112 (1902); Flagg v. Gilpin, 17 R.I. 10, 12-13, 19 A. 1084, 1084-85 (1890); Clark v. Allen, 11 R.I. 439, 443-44 (1877). In the course of addressing wagering contracts dealing with the price of commodities, this Court memorably stated:
“[Sjuch contracts are against public policy because they tend to unsettle the natural course of trade, and tempt the parties to them to work for a rise or fall in the prices of the commodities on which their wagers are laid, without regard to actual values, and by methods calculated to promote their own profit at the expense or ruin of others, without reciprocity of benefit. And besides these evils there are others, more immediate to the parties, culminating from time to time in loss of fortune and character, defalcations, crime, and domestic misery, evils which, though they do not always follow, yet follow so often that they have not been overlooked by the courts.” Flagg, 17 R.I. at 13, 19 A. at 1085 (emphasis added); see Winward, 23 R.I. at 492, 51 A. at 112 (stating that wagering contracts are contrary to public policy).
As early as 1902, this Court recognized that “[wjagering-contracts * * * are now held to be void and nonenforcible.” Winward, 23 R.I. at 492, 51 A. at 112. We added that it was “clear that in the opinion of the [Ljegislature public policy forbids the enforcement of all wagers by our courts * * *.” Id.; cf. Vogel v. Catala, 63 A.3d 519, 521 n. 3 (R.I.2013) (referencing G.L.1956 § 11-19-17, which states that “[a]ll * * * promises, given or made * * * for the repayment of money knowingly lent for * * * betting, shall be utterly void”) (internal quotation marks omitted).
In addition to those specific statements regarding wagering contracts, in the very first opinion published by this Court, while refusing to enforce a bet on an election “as tending to debase the character,” we stated that “[i]f a contract [has] a tendency to a mischievous consequence it is void.” Stoddard v. Martin, 1 R.I. 1, 4-5 (1828); see also Peter J. Comerford, Stoddard v. Martin: A Rhode Island Tale, 62 R.I. B.J. 13, 16 (March/April 2014) (stating that the bet at issue in Stoddard was unenforceable because it tended to cause the parties to act immorally). Our jurisprudence also indicates that “a contract term is unenforceable * * * if it violates public policy” and that such a contract term violates *809 public policy if it is “injurious to the interest of the public, * * * interferes with the public welfare or safety, * * * is unconscionable[,] or * * * tends to injustice or oppression.” NV One, LLC v. Potomac Realty Capital LLC, 84 A.3d 800, 807 (R.I.2014) (internal quotation marks omitted); see also Gorman v. St. Raphael Academy, 853 A.2d 28, 39 (R.I.2004).
Thus, a thorough and careful review of our precedent leads me to the conclusion that, if the annuity at issue, which significantly includes the “Double Enhanced Death Benefit,” can be said to be a wagering contract and against public policy, it is void, regardless of whether we title it an annuity or a life insurance contract. My careful review of the record has led me to the definite conviction that the annuity at issue in this case is indeed an illicit (and void) wagering contract.
In reaching my conclusion, I have focused on the fact that the annuity in question bears the hallmarks of a wagering contract of the type which this Court has condemned, regardless of the fact that it cannot be classified as a life insurance contract. See Winward, 23 R.I. at 492, 51 A. at 112. If one turns to the reason that certain wagering contracts were determined to be void without an insurable interest — namely, the concern that the individual who would profit from the death of the other individual involved has a motive to potentially harm that individual — it becomes clear that the annuity in this case is an impermissible wagering contract. See Grigsby, 222 U.S. at 155, 32 S.Ct. 58; Warnock, 104 U.S. at 779. The same concern for the well-being of the insured that was focused upon in Grigsby and Wamock is present in this case. This annuity allows the owner of the annuity to gamble on how well his or her investments will be doing at the time of the death of the annuitant. Due to the “Double Enhanced Death Benefit,” if the market is performing well, the owner of the annuity would have an incentive to end the life of the annuitant in order to reap a larger gain. I acknowledge, however, that it could also be the case that the market is doing poorly and that the “Double Enhanced Death Benefit” would provide the owner of the annuity with just the value of what he or she has put into the annuity plus interest, upon the death of the annuitant. But the fact that there is one feasible set of circumstances under which there would be no motive to harm the annuitant does not change the fact that there are circumstances created by the “Double Enhanced Death Benefit” whereby the owner of the annuity would have a strong incentive to harm the annuitant. Such a contract is at odds with the best interest and safety of the public and, in my judgment, could lead to “injustice or oppression.” NV One, LLC, 84 A.3d at 807. Thus, it is my view that the annuity at issue cannot be reconciled with important and venerable principles of public policy. Id.; see also Grigsby, 222 U.S. at 155, 32 S.Ct. 58; Warnock, 104 U.S. at 779.
Moreover, I would point out that it could certainly be said that the annuity at issue, which includes the “Double Enhanced Death Benefit,” is a contract that has a “tendency to a mischievous consequence,” such as the one we struck down in Stoddard, 1 R.I. at 4. Indeed, this particular annuity scheme did lead to mischievous consequences; it led to an array of criminal charges, and it also led to a loss of “fortune and character” for Joseph Cara-madre — a further indication that the annuity is against public policy. Flagg, 17 R.I. at 13, 19 A. at 1085; see also Western Reserve Life Assurance Co. of Ohio v. ADM Associates, LLC, 737 F.3d 135, 138 n. 2 (1st Cir.2013) (noting that Mr. Cara-madre had, at the time, been charged with “sixty-five counts of fraud, conspiracy, *810 identity theft, and money laundering” and citing. United States v. Caramadre, 882 F.Supp.2d 302, 804 (D.R.I.2012)).
In responding to the argument made by the majority, I find it desirable to address how to define a wagering contract and how to contextualize the particular definitional language in Winward, 23 R.I. at 492, 51 A. at 112, on which the majority relies. The opinion in Winward defined a wagering contract as follows:
“[(1)] an agreement by one party to pay another a sum of money, or give something of value if a certain event happens; and [(2)] a reciprocal agreement by the second party to pay the first a sum of money or give something of value if a certain contrary event happens; and, [(3)] that the events contemplated in the agreement shall be something other than the passing of a consideration between the parties.” Winward, 23 R.I. at 492, 51 A. at 112.
The majority contends that the annuity before us does not fit within the parameters of the just-quoted definition. The majority also contends that the annuity at issue, which contains the “Double Enhanced Death Benefit,” is not a wagering contract because it is not “purely speculative.” Cronin, 20 R.I. at 572, 40 A. at 497. In my opinion, however, the majority errs by rather myopically focusing on the specific language in Winward and Cronin, while simultaneously disregarding our voluminous precedent, discussed supra, with respect to contracts which are against public policy. I would also point out that the definition in Winward was articulated well over a century ago, and the drafters thereof could not have foreseen and taken into account an annuity like the one at issue in this case, which so very significantly contains the “Double Enhanced Death Benefit.” Moreover, a wagering contract can also be defined as “[a] contract made entirely for sport, the performance depending on the happening of an uncertain event.”[3] Black’s Law Dictionary 399 (10th ed. 2014). That definition would arguably apply to the annuity at issue in this case as the owner (ADM Associates, LLC) was wagering on how well its investments would have done at the time of the annuitant’s death — an uncertain event.[4]
Accordingly, although I am pleased to join the majority in its analysis and hold *811 ing with respect to the second certified question, I respectfully dissent from its holding and reasoning with respect to the first certified question. I would conclude that this annuity contract, which contains the “Double Enhanced Death Benefit,” is a wagering contract and, as such, is against public policy. Therefore, in my opinion, said contract was void ab initio.

. I note that, even though the United States Court of Appeals for the First Circuit certified only two specific questions to this Court, in its opinion certifying those questions, it stated that it was "uncertain as to whether the [annuity] constitutes an unenforceable wagering contract” and that "[wjhether an insurable interest was required for the [annuity] may * * * depend on whether it can be fairly characterized as a contract wagering on life.” Western Reserve Life Assurance Co. of Ohio v. ADM Associates, LLC, 737 F.3d 135, 141, 142 (1st Cir.2013).

, The majority notes that, in Cronin v. Vermont Life Insurance Co., 20 R.I. 570, 572, 40 A. 497, 497 (1898), this Court stated that an annuity, even though it may contain "ele-mentís] of chance,” is not infirm for lack of an insurable interest. However, we attributed that fact to a public policy decision. Id. The annuity at issue here contains the "Double Enhanced Death Benefit” and, thus, is not governed by our general statement in Cronin; rather, as the Court in Cronin indicated, we should look to our precedent regarding contracts which are void as against public policy in order to assess the annuity at issue in this case.

. Following the above-quoted definition, in way of further explanation, Black's Law Dictionary provides as follows:
"Although wagering and gaming agreements were generally enforceable under the English common law, they were condemned in most American states, in part because they were thought to encourage shiftlessness, poverty, and immorality, and in part[ ] because they were regarded as too frivolous to be worthy of judicial attention. Irwin v. Williar, 110 U.S. 499 [4 S.Ct. 160, 28 L.Ed. 225] (1884) (‘In England it is held that the contracts, although wagers, were not void at common law, * * * while generally, in this country, all wagering contracts are held to be illegal and void as against public policy.’)[.]” Black’s Law Dictionary 399 (10th ed. 2014) (quoting E. Allan Farnsworth, Contracts § 5.2 n. 4, at 326-27 (3d ed. 1999))
(internal quotation marks omitted).
Additionally, Black's Law Dictionary further defines a wagering contract as: "A contract in which performance depends on a business transaction or outcome. * * * With this type of wagering contract, a business person is protected from a trade risk.” Id. In my judgment, both the explanation provided and the additional definition support the conclusion that the annuity at issue in the instant case, which contains the "Double Enhanced Death Benefit,” is a wagering contract.

. In the interest of absolute clarity I wish to state that my conclusion in this case could very well have been different had this annuity not contained the “Double Enhanced Death Benefit;” it is that portion of the annuity which, in my opinion, renders it void.