## DUNN v. TRAIN.

(Circuit Court of Appeals, First Circuit. September 29, 1903.)

No. 461.

**1. PLEDGES—VALIDITY—SUFFICIENCY OF DELIVERY.**

By an agreement a paper company was to deliver all the product of its mill to plaintiffs, who were its selling agents, as security for advances which were made to it by plaintiffs, and such deliveries were made as fast as the goods were manufactured to a designated agent for plaintiffs, who was also an employé of the company, and the product when so delivered was placed by itself on the premises of the company, and was thereafter controlled by the agent, who shipped it from time to time for sale when ordered by plaintiffs. *Held* that, under the rule that there must be both delivery and continued possession to constitute a valid pledge as to third parties, there was such actual delivery and continued possession by the pledgees as to render the pledge valid as against an assignee in insolvency of the company, with respect to the goods on hand in the custody of the agent when the assignee was appointed.

**2. SAME—RECEIPTS.**

A pledge is not invalidated because no receipt was given the pledgor for the goods when they were actually delivered to an agent of the pledgee, although they remained on the premises of the pledgor, nor because on a transfer of possession by the agent to a successor he took no receipt for the goods.

**8. INSOLVENCY—VALIDITY OF TRANSFERS—BURDEN OF PROOF.**

To entitle an assignee in insolvency under the statute of Maine to invoke the provisions of such statute making void transfers of property by the insolvent within four months to one having reasonable cause to believe him insolvent, or in contemplation of insolvency, or for the purpose of giving preference to pre-existing debts, such assignee must establish by proof the facts which bring the transaction in question within the terms of the statute and make it applicable.

In Error to the Circuit Court of the United States for the District of Maine.

Charles F. Woodard, for plaintiff in error.

George E. Bird (William M. Bradley, on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. This case involves an agreement or pledge under which the plaintiff below, as selling agent of the Bangor Pulp & Paper Company, had advanced money largely in excess of the value of the replevied goods, and one which contemplated that the material in question—bundles and rolls of paper already finished into paper from pulp, and such as should from day to day be finished—should be delivered to the plaintiff, now the defendant in error, as security for the sums so advanced. There is no question here as to the consideration or as to the actual good faith of the parties, neither is there any question about the intention of the parties to create security by pledge.

This case must therefore turn upon the question of delivery and acceptance, or, in other words, upon change of possession. We as-

sume that it was necessary to the creation of a valid pledge, as against third parties, that it must have been intended that possession should change from the pledgor to the pledgee, and that, possession being changed, it must be preserved by the pledgee through a retention of such dominion over the property as the rules of law require.

This we assume, at the outset, to be an essential element of such an agreement where the question of right is to be determined between the pledgee and a bona fide purchaser or attaching creditor, and for this case we may assume such to be the rule as between a pledgee and an assignee in insolvency. Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779. Having assumed this, as contended for by the plaintiff in error, the citations from the Maine statutes and the authorities fail to apply, for the reason that they are directed against situations where a change of possession does not exist; and it results, therefore, that the only question left to that side upon this branch of the case relates to the sufficiency of the delivery and acceptance. In other words, did the parties, intending to make the pledge effective, do enough to answer the requirements of the law?

It being a question of intention, and a question whether the change in the situation of the property was such as to be notice of a change of possession, it was, under the circumstances, largely a question of fact, to be determined under rules of law.

The learned judge who heard the case below has found that the paper manufactured at the time of the agreement—350,000 pounds at 2 cents a pound—was billed to the pledgees by the Bangor Pulp & Paper Company, and that the Bangor Pulp & Paper Company received from the pledgees $6,500, and receipted for the same; that the paper, so billed and receipted for, remained in the custody of the agent of the pledgees at the mill of the Bangor Pulp & Paper Company at Orono, Me., an agent whom the parties agreed upon for that purpose, and who was an employé of the paper company; that, by arrangement of the parties, the paper thereafter manufactured was also put into possession of the pledgees in the same way to secure the liens for advances made thereon from time to time, and that it all remained in the hands of the agents of the pledgees, subject to their orders; and that thereafterwards, to the end that the situation might be made more secure for the pledgees, the Bangor Pulp & Paper Company, on the 31st day of August, 1895, sent a communication to Train, Smith & Co., the pledgees, as follows:

"Boston, August 31, 1895.

"Messrs. Train, Smith & Company—Gentlemen: In your order to keep your general lien unimpaired and, at the same time, to save the freight on the goods, we agree to deliver each day to your agent here, Mr. John H. Kline, the finished product of our paper mill, taking his receipt therefor. These goods are to remain in his possession as your agent and may be kept in store by him in our basement without charge until shipped by him in your name. We are to allow Mr. Kline to act as your agent. Very truly yours,

"Bangor Pulp and Paper Company,
"Chas. W. Walcott, Asst. Treasurer."

It was further found as fact that from the said 31st day of August the paper company for a time delivered to Mr. Kline, under this arrangement, all the finished product of the mill, the place of such de-

posit being accessible from other portions of the mill; that paper thus deposited remained where it was deposited in the mill, apart by itself, not confused with any other paper, until December 30, 1895, at which time the paper company had constructed a new storehouse, and thereupon the paper which had been already delivered and deposited in the basement and shipping room of the mill, as above stated, was transferred to the new storehouse, and remained under the care of Gedney, who had been appointed the agent of Train, Smith & Co., where it remained apart from all other paper until replevied; that the several agents who had been appointed for the purpose of holding possession and taking delivery, when ceasing to act for the pledgees, made no formal delivery to their successor, but left the pile where it was and as it was, each successor adding to the pile the product as it was delivered to him; that no distinguishing marks had been put upon any of the paper; that part of the deliveries were receipted for by the agent, while others were not, but the paper for which receipts had not been given was placed daily with the paper for which receipts were given, and the same was taken charge of by the agent.

The learned judge ruled that the plaintiffs below became pledgees of the paper so set apart and deposited with their agents, with power and right to sell all or any portion of the same and credit the proceeds, and that the pledgees were entitled to hold such paper under general advances actually made; that paper delivered without receipts and taken into the control of the plaintiffs' agents was affected with the pledge the same as that receipted for.

We think the learned judge was right. The substantial question, as we have said, is whether there was a sufficient delivery and acceptance of the property. There is no rule of law that a delivery or change of possession shall be established by a receipt. There may be a valid delivery and acceptance, or, in other words, a change of possession, without a receipt. The real question being whether there was a sufficient delivery and change of possession, the receipts, such as were given, were merely evidence upon that question, and there was no error in including the property not receipted for, provided the facts in other respects were sufficient to warrant the holding.

We assume, of course, as we have already said, and in accordance with the cases cited by the plaintiff in error from the decisions of the Supreme Court of Maine and of the Supreme Court of the United States, that, as against third parties, a delivery of possession is essential to a valid pledge or lien, and that continued possession is likewise essential, and thus the situation at once resolves itself into one where the real question is whether, upon the facts disclosed by the findings, we should say, as a matter of law, that the facts did not warrant the findings below.

Thus, the necessity of delivery and continued possession being assumed, we must consider whether, upon the facts disclosed, the situation was such as to require this court to say that the findings as to delivery and possession were not warranted by law. In this connection it must be observed that the general and specific findings, together with the rulings and the judgment thereon, to say nothing of presumptions which ordinarily go with general findings and judg-

ment, sufficiently show that the learned judge below treated delivery to the pledgees and continued possession by them as essential elements of a valid pledge. The whole theory of the findings proceeds upon the idea that the parties understood a change of possession to be necessary, and that they undertook to create such a change, and that the judge who tried the case considered such a change essential.

Upon the question whether possession was maintained, if acquired, it will be seen that there is no finding that the pledgees abandoned such possession of the property as they had, and, indeed, the record discloses no evidence tending to show an intentional relinquishment of such possession as they had. On the contrary, the evidence and the finding show that, through their agents, they continued to exercise dominion over the property. And, if it were a question whether the findings were justified by the evidence, it would apparently be found that there is no evidence of an abandonment of the delivery and possession which the pledgees claim to have perpetuated through their agents from Kline down through to Gedney.

We are not aware of any absolute rule of law which would render actual possession and dominion inoperative, and a pledge invalid because the keeper selected to protect the property was in the employ of the pledgor. Such a bailee or keeper was in the employ of the manufacturers in Sumner v. Hamlet, 12 Pick. 76; and even, as said in Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779, temporary possession may be in the pledgor himself as special bailee without defeating the legal possession of the pledgee. Neither is there any absolute rule of law that, where one keeper succeeds another, formal delivery shall be made to the successor. Of course, enough should be done to identify the property, and to show that dominion and control over the property were assumed by the successor, and this sufficiently appears; for the learned judge below has said that the pile being left where it was, and as it was, the successor added to this pile the product as it was delivered to him. Nor is there any absolute rule of law which requires property pledged to be removed from the premises of the pledgor. It is enough if the facts sufficiently show that the goods are actually set apart in the keeping of the special bailee, with authority to notify third persons that they are held in pledge, and to remove the goods, if found necessary for the safety of his principal.

Resuming consideration of the substantial question, which relates to the sufficiency of the delivery, the general rule is that the delivery must be such as to pass property, and this rule is apparently satisfied by depositing the article pledged or sold in some suitable place for the pledgee or keeper to take away when he chooses, and the delivery may be either actual or constructive. There is no occasion, however, to deal with the doctrine of constructive delivery, for the goods here were actually delivered in pursuance of an agreement and upon a valuable consideration actually advanced.

The Maine Case of Merrill v. Parker, 24 Me. 89, while not strictly in point, as there were no third-party interests, is still a strong case for the defendant in error upon the question of sufficiency of change in possession, because there an important thing remained to be done by the buyer, who was to call and pay for the goods which had been bar-

gained for and set aside in the seller's shop; still it was held that enough was done to pass the title.

Of the cases which we have examined as illustrating the principle involved in the question we are considering, that of Sumner v. Hamlet, 12 Pick. 76, would seem to apply itself to the situation more closely than any other. See, also, Thorndike v. Bath, 114 Mass. 116, 19 Am. Rep. 318.

Of course, where the property pledged is not removed from the premises of the pledgee, the fact of actual delivery and of actual control and dominion by the pledgee or its agent should clearly and unmistakably appear, and, the fact being so established, the requirements of the law are answered. In this case it is distinctly found that the delivery or deposit was actually made to the pledgee, and that dominion over the property was exercised by the pledgee through its agents down through to Gedney, when, in December, as distinctly found by the learned judge below, the paper which had been already delivered and deposited in the basement and shipping room of the mill was transferred to the new storehouse and remained under the care of Gedney, who had been appointed the agent of Train, Smith & Co., where it remained apart from all other paper until replevied.

Now, as to the question of the effect of insolvency proceedings. Some part of the goods replevied were delivered within four months of the assignment and of the insolvency proceedings; but they were delivered in pursuance of an agreement entered into more than four months before, and we must assume, from the general finding and judgment, upon money actually advanced in good faith, and not upon reasonable cause to believe or in contemplation of insolvency, or for the purpose of giving preference to a pre-existing debt, or in fraud of the laws of Maine relating to insolvency. We cannot upon writ of error go into the question of fact whether the Bangor Pulp & Paper Company was actually insolvent or whether the pledgee had reason to believe that it was in a failing condition. The statute in question is not operative in the hands of an assignee in insolvency against an actual transaction of this kind, unless he establishes in the proper court the facts contemplated by the statute as showing conditions under which it will become effective. This the assignee has not done. There are no findings against the pledgees upon the questions of fact necessary to make the statute operative in the hands of the assignee, while the general findings, the rulings, and the judgment carry the presumption that the facts contemplated by the statute were found against the assignee. This being so, we are not called upon to examine the question whether insolvency proceedings would affect or impair the delivery of goods within four months, under an agreement, prior to such period, made in contemplation of insolvency, as a preference to secure a pre-existing debt upon reasonable cause to believe insolvency, or in fraud of the insolvency laws of Maine.

Upon the findings, we think there was no error in the rulings as to the insolvency phase of the case.

Having sustained the position of the court below as to the right of possession by the pledgees, there is, we think, no occasion for dis-

cussing at length the questions raised by the fifth assignment, for it is clear enough, the pledge being valid and the right of possession on the part of the pledgees being established as an existing and continuing right, that the claim of possession on the part of the assignees prior to the date of the writ, without discharging the lien or pledge by paying or tendering the amount due, was wrongful.

The judgment of the Circuit Court is affirmed, and the defendant in error is to recover costs of appeal.