## ALLEN v. HOLLANDER.

### (Circuit Court, D. Massachusetts. February 3, 1904.)

### No. 1,542.

1. BANKRUPTCY—AVOIDANCE OF TRANSFERS MADE BY BANKRUPT—SUFFICIENCY OF DELIVERY.

By an agreement entered into in good faith, a debtor who was a dealer in carriages undertook to transfer certain carriages to a creditor, to be sold by him at stipulated prices, and the proceeds applied on the indebtedness. An informal paper, in the nature of a bill of sale, as security, was executed, describing the carriages, which were delivered to an agent for the creditor, who removed them into a separate room in the debtor's warehouse, where they were tagged with the creditor's name, and there left to be sold by his agent. *Held*, that there was such a delivery as to pass the property, as against a trustee in bankruptcy of the debtor, appointed in proceedings instituted more than four months thereafter.

In Equity. Suit by trustee in bankruptcy to require an accounting by defendant for property transferred to him by the bankrupt.

Burdett & Snow and Charles W. Stapleton, for complainant.

F. W. Kittredge, Robert A. Jordan, and Abraham Benedict, for defendant.

ALDRICH, District Judge. The plaintiff, a trustee under involuntary bankruptcy proceedings, seeks to compel an accounting for certain property described in the bill, which it is claimed was not legally transferred to the defendant more than four months before the adjudication in bankruptcy.

It is stipulated between the parties here that notes 38, 44, 45, 46, 47, 48, 49, and 50, amounting to the sum of $3,900, were given by Gray, and delivered to Hollander, the defendant, and that Gray had the money on them from Hollander, but it appears that Hollander obtained the money which he advanced to Gray by depositing these notes in a bank or banks. I find that Gray and Hollander, early in September, acting upon the idea that Hollander was to take care of the notes, and treating the money which Hollander had advanced as an indebtedness, undertook to effect a transfer of the property in question from Gray to Hollander in discharge of such indebtedness. It is beyond question that the parties, early in September, undertook to make Hollander secure, and to discharge this indebtedness by transferring the carriages in question, except one brougham, which is the third carriage mentioned in the plaintiff's bill. The plaintiff claims, however, that the transaction was not a legal one, as against creditors, and that, as trustee in bankruptcy, he is entitled to an accounting for the value of the carriages; and such claim is based upon the idea, first, that, Hollander's liability being contingent, he was not a purchaser for value, or, as a pledgee, that he was not a holder of the property for an actual, existing indebtedness; and, second, whether this is so or not, that there was no sufficient delivery four months before bankruptcy proceedings to pass title to the property from Gray to Hollander.

There is no point taken that the indebtedness or liability, whichever way it is to be designated, was not sufficient in amount to become an adequate consideration for a transfer of the property; the point being that, the liability being contingent, it was not of a kind to make him a holder for a valuable consideration. On this phase of the case, I find that the parties undertook to effect a transfer of the property for the money which Hollander advanced to Gray, and that Hollander was to pay the notes.

Now, as to delivery, I find that Mr. Hollander, feeling uneasy in respect to his affairs with Gray, had some negotiations with him or his agent with reference to the matter, and, to make him secure, an informal paper, in the nature of a bill of sale, for security, describing the carriages, was executed by Gray to Hollander in the early days of September, 1898 (dated September 7th). This paper was delivered to one Cross, as the agent of Hollander.

I also find that, at or about the time the paper was executed, the carriages specified therein were tagged with the name of Hollander, and set apart from the other carriages for him, by moving them to another part of the building (that is to say, to the several floors of No. 22 Wooster street), and put into the keeping of Cross, as the agent of Hollander. The carriages were moved to No. 22, which, it is understood,

is under the same roof, and a part of what had been occupied as a ware-house and salesrooms; but No. 22 had been, or was about to be, given up as such. Whether occupancy of No. 22 had actually been surrendered as a part of Gray's salesrooms is not made certain by the evidence, but, whether it had actually been surrendered or not, the carriages were removed to that place for the purpose of making the change of possession more apparent, thus bearing upon the question of intention as to delivery. A few days thereafter, and not later than the 12th of September, Mr. Hollander went to New York, examined the carriages, discussed and considered the question whether the delivery was sufficient to transfer the property to him, approved of the transaction and the place to which the carriages had been removed, and the parties fixed the price at which the carriages should be sold and applied on the indebtedness; and it was agreed between them that Cross should remain the agent of Hollander, to sell the carriages for Hollander, if he could, and account to him for the money. The carriages remained there in such possession of Cross until the 10th of October, 1898, when the defendant removed them to Amesbury, Mass., his place of business.

I find, as a matter of fact, that the transaction was bona fide and in good faith, and that the idea of the transaction was to make Hollander secure; that Gray undertook to deliver the carriages to Hollander, in good faith, upon the indebtedness or liability which has been described; and that Hollander accepted them upon such indebtedness or liability at the prices designated, both parties believing that the transaction was legal and binding. The involuntary bankruptcy proceedings were instituted on the 19th of January thereafter.

Upon the foregoing facts, it would seem that the transaction was so far perfected, and the delivery of such a character, that the transfer became binding and effective as between the parties; and it cannot be seen that the trustee in bankruptcy, under the circumstances of this case, is in a position to avoid a transfer of property like this. The trustee does not stand quite like a subsequently attaching creditor in good faith, or like a subsequent bona fide purchaser for value. Neither is this a case where the bankrupt undertook to convey property in fraud of his creditors. It is the familiar case in which one creditor, more alert than others, in looking out for his own interests, undertook to make himself secure, and, not succeeding in getting money, took property which was to be applied on the indebtedness or liability at an agreed amount. Aside from the question of the sufficiency of the delivery, or, in other words, the question whether the change in possession was sufficient, which is in the nature of a legal question, the case stands no different than it would if Gray had in good faith paid one of his creditors so much money in discharge of indebtedness or liability more than four months before bankruptcy proceedings.

In view of the recent decision in Dunn v. Train (C. C. A.) 125 Fed. 221, the conclusion is that the delivery was sufficient to answer the purposes of the law, and to pass the property. Certain New York cases have been called to our attention, like Button v. Rathbone, 126 N. Y. 187, 27 N. E. 266. That was a case with respect to an unfiled chattel mortgage in New York, where the statute declared such mortgage void as against subsequent purchasers and mortgagees in good faith; and

it was held that marking and setting aside was not sufficient, in view of the statute. That is not this case, for a trustee in bankruptcy is neither a subsequent mortgagee, nor a subsequent purchaser in good faith. He represents the body of creditors. And the question is whether a creditor who in good faith has undertaken to secure himself by receiving property in discharge of his claim should, in a bankruptcy proceeding instituted more than four months thereafter, be compelled to account to a trustee, as the representative of the bankrupt estate, upon the ground that the delivery was not sufficient in law; and that question, in the absence of fraud, is not quite like a question of delivery and sufficiency of change of possession, presented by a subsequent bona fide purchaser for value, or a subsequently attaching creditor in good faith.

The case of Prentiss Tool & Supply Co. v. Schirmer, 136 N. Y. 305, 32 N. E. 849, 32 Am. St. Rep. 737, is another case based upon the New York statute. In that case there was no delivery of the goods, and it is said that the transaction was presumptively fraudulent as against attaching creditors, which presumption was treated as conclusive unless it should be made to appear on the part of the plaintiff that the sale was made in good faith, and without any attempt to defraud creditors or purchasers. It cannot be seen that the general law of New York, independent of cases based upon local statutes designed for the protection of subsequent bona fide purchasers and subsequently attaching creditors, is different in respect to delivery and change of possession from what has recently been held in the case of Dunn v. Train, to which we have referred.

It must be always assumed that delivery and change of possession are necessary to a transfer of title, and, such assumption being made, the question of the sufficiency of delivery and change of possession becomes a mixed question of law and fact. But, as observed, when the question whether, upon the facts, the delivery and change of possession are sufficient to answer the purposes of the law, is raised by a subsequent bona fide purchaser for value, or a subsequently attaching creditor in good faith, it stands differently than when raised by the debtor himself, as between him and a creditor, or by a trustee in bankruptcy. In re New York Economical Printing Company, 110 Fed. 514, 517, 49 C. C. A. 133; In re Garcewich, 115 Fed. 87, 53 C. C. A. 510; In re Kellogg, 118 Fed. 1017, 56 C. C. A. 383.

The conclusion is that the delivery was sufficient in this case to pass the property, as against the trustee, and that the defendant should not be held to account. Bill dismissed.