### AMERICAN CAN CO. et al. v. ERIE PRESERVING CO. et al.

### SAME v. NEW YORK COUNTY NAT. BANK et al.

### SAME v. TIMERMAN et al.

(Circuit Court of Appeals, Second Circuit. November 14, 1910.)

Nos. 11–13.

1. PLEDGES (§ 11*)—NATURE AND ESSENTIALS—DELIVERY AND POSSESSION.
   A pledge is utterly invalid unless accompanied by actual or constructive possession.

   [Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 28–35; Dec. Dig. § 11.*]

2. PLEDGES (§ 11*)—NATURE AND ESSENTIALS—DELIVERY AND POSSESSION.
   A preserving company made a lease of all its premises to a warehousing company for the purpose of obtaining warehouse receipts for goods stored therein to be used as collateral for loans. Such receipts were issued on requisition from its superintendent, who was also made custodian for the warehousing company and were pledged as collateral, but the goods covered by the receipts were not separated from other goods of the pledgor, nor were the goods or the buildings marked in any way to indicate possession by the warehousing company. Other receipts similar in form were issued by employés of the preserving company for goods on the same premises and pledged by the company, and in one instance only the pledgee had the goods segregated, marked, and placed in charge of an agent. *Held*, that in the latter case the pledge was valid, but in all others they were invalid for want of delivery to and possession by the pledgees.

   [Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 28–35; Dec. Dig. § 11.*]

3. RECEIVERS (§ 77*)—INVALID PLEDGE—EQUITABLE LIEN.
   If the essential element of possession of property by a pledgee was wanting to make the pledge good when receivers were appointed for the pledgor, equity will not thereafter supply it to the detriment of the general creditors.

   [Ed. Note.—For other cases, see Receivers, Cent. Dig. § 141; Dec. Dig. § 77.*]

4. WORDS AND PHRASES—"FIELD STORAGE WAREHOUSING."
   "Field storage warehousing" is warehousing the owner's goods on the premises of the owner or of the former owner.

Appeals from the Circuit Court of the United States for the Western District of New York.

Suit in equity by the American Can Company and Paul Voorhees against the Erie Preserving Company. From orders (171 Fed. 540)

denying the petitions of Ladenburg, Thalmann & Co., Conrad Heinrich Donner, the New York County National Bank, and Arbuthnot, Latham & Co., they appeal; and from an order (171 Fed. 548) allowing the petition of the Bank of North Collins, Clark H. Timerman and William E. Peugeot, receivers, appeal. Affirmed.

Rogers, Locke & Babcock (L. L. Babcock, Frank B. Colton, and Edwin J. Rice, of counsel), for appellants in Nos. 11, 12.

John Hull, for receivers.

George P. Keating, for intervening creditors.

E. F. Kruse, for the Bank of North Collins.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. The Erie Preserving Company was engaged in the business of canning vegetables and fruit in factories at Irving, North Collins, and Model City, N. Y. The American Warehousing Company was engaged in what is known as "field storage warehousing"; that is, warehousing the owner's goods on the premises of the owner or of the former owner. This system is frequently practiced and is entirely effective when properly carried on. Phila. Co. v. Winchester (C. C.) 156 Fed. 600.

In August, 1907, the preserving company entered into an agreement with the warehousing company for the purpose of obtaining warehouse receipts for goods stored on its own premises; the receipts to be used as collateral for loans. To that end it leased all its premises to the warehousing company, and the warehousing company appointed one Wode, who was the preserving company's superintendent, to act as its own custodian of the warehoused goods. Various other agreements not necessary to mention were entered into to carry out the arrangement.

The course of dealing was that, upon requisitions of Wode, the warehousing company issued warehouse receipts for property actually on the premises to the order of the preserving company, which it indorsed and used as collateral. Receipts of this kind were held by the New York County National Bank, dated in June, 1908, and Arbuthnot, Latham & Co., dated from September, 1907, to March, 1908.

Other receipts similar in form were issued by Edward J. Sheridan, an employé of the preserving company, as a warehouseman, and used in the same way. Such receipts were held by Ladenburg, Thalmann & Co., dated in March, 1908, and by Conrad Heinrich Donner, dated in February, 1908, both of whom supposed that Sheridan was an independent warehouseman.

Other similar receipts were issued by Wode as a warehouseman and used in the same way. Such receipts were held by the Bank of North Collins, dated January, February, and March, 1908. It knew that Wode was the superintendent of the preserving company, but appointed him as its own custodian of the goods mentioned in the receipt.

March 7, 1908, receivers of the preserving company were appointed in this suit by a stockholder and a general creditor, alleging that

183 F.—7

it was not able to meet its obligations in due course and praying that it be wound up and its assets distributed among its creditors. The defendant company in its answer admitted the allegations of the bill.

The goods mentioned in the receipts of the Bank of North Collins and goods in kind and amount of those mentioned in the other receipts were sold without prejudice to the rights of any one, and the holders of the receipts claim the proceeds or an equitable lien on the same.

Only one lease is in evidence, viz., that to the warehousing company for all the preserving company's premises. Sheridan testified that he had a "little lease" which was called for but not produced. Of course there could not be two leases of the same premises to different persons at the same time, and at the date of Sheridan's receipts the premises were leased to the warehousing company, which had a custodian there. Wode did not pretend to have any lease.

The business of the preserving company after the lease of its premises to the warehousing company went on in exactly the same way as before. Goods covered by the receipts, except in the case of the Bank of North Collins, were sold and other goods substituted. The use and occupation of all the premises by the preserving company was open, continuous, and exclusive. Care was taken by the warehousing company and by Sheridan that there should always be more goods of the same kind on the premises than were called for by the warehouse receipts, but none of the goods called for by the receipts were segregated or marked so as to be distinguished from the general stock of the preserving company, except in the case of the Bank of North Collins.

All the loans were made in entire good faith on the strength of the receipts and of the goods called for by them, and the preserving company intended to give a valid lien thereon. The receipts were assigned to the lenders for the purpose of pledging the goods, and we think the case turns on the question: Had the lenders valid pledges? A pledgee, though he may sell the pledge if the debt is not paid, has only a lien upon and no title to it. The common law does not recognize a lien unaccompanied by possession either actual or constructive. This does not depend in any way upon fraud, actual or presumptive. We therefore need not examine the statutes or the law as to sales unaccompanied by delivery. We are not concerned with the questions whether such sales are void as absolutely fraudulent or only voidable as presumptively fraudulent, or whether all creditors may attack them or only creditors existing when the sales were made. The law as to pledges is clear, viz., that they are utterly invalid unless accompanied by actual or constructive possession. The subject is elaborately considered by Mr. Justice Bradley in Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779.

The judge of the Circuit Court rightly held that the receipts were invalid because the goods were not warehoused, and that there was no valid pledge because no delivery was made to the lenders except in the case of the Bank of North Collins.

Warehouse receipts would give constructive possession of goods actually warehoused; but it is plain that the warehousing company did not maintain a warehouse in any proper sense, because it had no

exclusive and unequivocal possession. There is no pretense that either Sheridan or Wode were warehousemen at all. Yenni v. McNamee, 45 N. Y. 614. Therefore the holders of these receipts who had no actual possession had no constructive possession either. The Bank of North Collins has, however, been found both by the special master and the judge of the Circuit Court to have actually set apart and marked and kept in its own custody the goods described in its receipts which remained undisturbed down to the time receivers were appointed. We will adopt the conclusion of the court below as to its claim also because it did have actual possession and a valid lien.

It is contended by the holders of the receipts of the warehousing company and of Sheridan that they have an equitable lien. Equity would have compelled the preserving company to make actual delivery of the goods intended to be pledged, and it is said that the receivers standing in the place of the preserving company are subject to the same rule. But, though equity will treat that which ought to have been done as done between the parties, it will not do so to the prejudice of third parties. If the essential element of possession of property in existence was wanting to make the pledges good when receivers were appointed, equity would not thereafter supply it to the detriment of general creditors.

All the orders are affirmed, with costs.