## In re SPANISH–AMERICAN CORK PRODUCTS CO. *

## WESTERN NAT. BANK OF BALTIMORE v. CHAPMAN (two cases).

(Circuit Court of Appeals, Fourth Circuit. October 23, 1924.)

### Nos. 2233, 2244.

**1. Bankruptcy ⚖️184(1)—Pledge held invalid for want of possession by pledgee.**

Bankrupt, a manufacturer of cork products, undertook to pledge certain of its materials in stock to claimant bank as security for loans. The property was placed in rooms in bankrupt's plant, nominally leased to an employee of bankrupt, who and a watchman alone had keys to such rooms, the doors of which bore signs that they were the property of such employee or "agent." The name of claimant did not appear, nor was there any sign on the outside of the building indicating the pledge. Debts were thereafter contracted. *Held*, that there was no such delivery to and possession by claimant as to render the pledge valid as against the trustee in bankruptcy.

**2. Pledges ⚖️11—Segregation and visible possession by pledgee essential to validity.**

The general law of pledge requires the pledgee to make such segregation and marks as will indicate his possession to business men of ordinary prudence dealing with the pledgor in the ordinary course of business.

**3. Bankruptcy ⚖️440—Order disallowing claim to lien reviewable by appeal.**

An order disallowing a claim to a lien is reviewable by appeal.

On Petition to Superintend and Revise in Matter of Law Proceedings of, and Appeal from, the District Court of the United States for the District of Maryland, at Baltimore, in Bankruptcy; Morris A. Soper, Judge.

In the Matter of the Spanish-American Cork Products Company, bankrupt; R. Bayly Chapman, trustee. The Western National Bank of Baltimore appeals from and petitions to revise an order of the District Court. Petition dismissed, and decree affirmed on appeal.

Frank B. Ober and Joseph C. France, both of Baltimore, Md. (C. R. Wharton Smith and Janney, Ober, Slingluff & Williams, all of Baltimore, Md., on the brief), for petitioner and appellant.

Joseph Bernstein and Myer Rosenbush, both of Baltimore, Md. (Rosenbush & Bernstein, of Baltimore, Md., on the brief), for respondent and appellee.

Before WOODS and WADDILL, Circuit Judges, and GRONER, District Judge.

WOODS, Circuit Judge. The Spanish-American Cork Products Company was organized in October, 1921. The company rented the premises of the Baltimore Cork Company at 1920 North Gay street, Baltimore, and engaged in the manufacture of cork products. It operated at a loss from the beginning, and was adjudicated a bankrupt in December, 1923.

[1] The Western National Bank of Baltimore claims a pledge of certain cork as security for loans made to the bankrupt between July 31, 1922, and January 8, 1923, aggregating at the time of bankruptcy $15,527.46, after allowing credits. To secure the loans the cork company pledged certain corkwood, disc waste, cork shavings, and stripped cork stored on the premises at 1920 North Gay street. The business was transacted in this way: The bank appointed one Nichol, an employee and afterwards an officer of the cork company, its agent. The cork company leased in writing to Nichol certain described floors, cellars, and vaults in the buildings it occupied as a manufacturing plant. The cork intended to be pledged was stored by the company in the leased portions of the plant. Nichol then issued receipts or statements to the Western National Bank showing the amount and kind of cork held by him as agent. The cork thus stored was kept separate from the other stock, and was not visible to one entering the buildings. There was no sign or notice on the outside of the buildings indicating control of any part of the premises or of the buildings or of the cork by any one other than the cork company. The inside doors to the leased portions of the buildings were padlocked, and Nichol and a watchman in the employ of the cork company were the only persons having keys to these doors. As instructed by the bank, Nichol placarded these inside doors with large signs, "Keep Out. Property of A. E. Nichol, Agent," or, "Property of A. E. Nichol, Agent. Hands Off." The cork itself had no tags or brands indicating ownership of the bank. The name of the bank nowhere appeared on the leased premises.

When withdrawals by payment or substitution were made, Nichol would notify the bank of the kind and quantity of cork affected. Nichol had general instructions from the bank to receive payments on its behalf and to release cork. He had authority also to allow substitutions of cork, and the privilege of substitution was exercised at times by the cork company under his supervision. As payments were made to the bank, Nichol, or the watchman at his direction, would unlock the doors and supervise the removal of the cork released.

During the time that this lease arrange-

*Certiorari denied 45 S. Ct. 225, 69 L. Ed. ——.

ment was in effect, the cork company was permitted to enter and use for a period of about six weeks driers located in the leased portion of the building.

Swope, vice president of the Western National Bank, was a stockholder, officer, and director of the cork company from the time of its organization. He was, at all times thoroughly familiar with the affairs of the company and took an active part in directors' meetings. The loans made by the bank were passed on by the president, Reiman, but were generally presented to him by Swope. Frequent full financial statements were furnished to the bank.

Credit was extended to the cork company by general creditors subsequent to the arrangement with the bank.

We think, both on principle and authority, the District Court correctly decided that the bank had no such possession as is necessary to a pledge.

These cases relied on by the appellant involve choses in action which, as pointed out in Sexton v. Kessler, 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995, are not on the same footing as goods and chattels. In re Hub Carpet Co. (C. C. A.) 282 F. 12; Greey v. Dockendorff, 231 U. S. 513, 34 S. Ct. 166, 58 L. Ed. 339; Sexton v. Kessler, 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995. The cases cited below also relied on are different in their facts and nearly all relate to goods pledged and so separated and marked as to give notice to the public of the possession of the pledgee: Allen v. Hollander (C. C.) 128 F. 159; First National Bank v. Pennsylvania Trust Co., 124 F. 968, 60 C. C. A. 100; Van Brunt v. Pike, 4 Gill (Md.) 270, 45 Am. Dec. 126; Dale v. Pattison, 234 U. S. 399, 34 S. Ct. 785, 58 L. Ed. 1370, 52 L. R. A. (N. S.) 754; Union Trust Co. v. Wilson, 198 U. S. 530, 25 S. Ct. 766, 49 L. Ed. 1154; Philadelphia Warehouse Co. v. Winchester (C. C.) 156 F. 600; Love v. Export Storage Co., 143 F. 1, 74 C. C. A. 155; Fidelity Ins. & S. D. Co. v. Roanoke Iron Co. (C. C.) 81 F. 439; American Can Co. v. Erie Preserving Co. (C. C.) 171 F. 549; In re Ozark Cooperage & Lumber Co., 180 F. 105, 103 C. C. A. 603; Boise v. Talcott (C. C. A.) 264 F. 61; Taney v. Penn Bank, 232 U. S. 174, 34 S. Ct. 288, 58 L. Ed. 558. Most of these cases were decided before the Amendment of 1910 giving the trustee in bankruptcy the rights of a lien creditor (Comp. St. § 9631).

The following cases also decided prior to the Amendment of 1910 support the contention of appellant: Dunn v. Train, 125 F.

221, 60 C. C. A. 113; Bush v. Export Storage Co. (C. C.) 136 F. 918; In re Cincinnati Iron Store Co., 167 F. 486, 93 C. C. A. 122.

[2] All authorities agree that possession is necessary to the validity of a pledge. The necessary indication of possession varies, of course, according to the nature and bulk and situation of the property. The rule is the pledgee must either have actual exclusive possession of the property, or if it remains on the pledgor's premises he must so separate and mark it as to give notice of his possession to the public, who might deal with the pledgor on the faith of it. In this case the cork was in the building occupied by the bankrupt, engaged in the cork business. Those who dealt with it had a right to assume in the absence of notice that the stock of cork carried in the building for use in the business was the property of the company which was using it. There was nothing on the outside to put anybody on inquiry. The public dealing with the cork company or interested in it could not be required to search for notice of some other ownership of the stock of cork by making an obtrusive and prying inspection of the inside of the cork company's premises to find and inquire the meaning of the signs of agency of one of the bankrupt's employees. There is no binding nor well-considered case that goes to that length. It is the duty of the pledgee to make such segregation and marks as will indicate his possession to business men of ordinary prudence dealing with the pledgor in the ordinary course of business. In Security Warehousing Co. v. Hand, the facts as set out in the syllabus in 143 F. 32, 74 C. C. A. 186, affirmed in 206 U. S. 415, 27 S. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789, were almost exactly the same:

"A bankrupt was a corporation of Wisconsin engaged in operating knitting mills in that state. A so-called warehouse company incorporated in New York and having its principal office there with a branch in Chicago nominally leased certain spaces in the bankrupt's storage rooms at its mills which were inclosed by open palings having gates locked with a padlock having the name of the warehouse company thereon, and such company issued receipts from its Chicago office to the bankrupt for goods of the latter stored therein which receipts were indorsed by the bankrupts and delivered to claimants as collateral security for loans. All expense of inclosing and maintaining such storage rooms was paid by the bank-

rupt and certain of its employees were appointed custodians by the warehouse company and had the keys to the inclosures. No goods other than those of the bankrupt were stored therein, and there were no signs on the buildings indicating their occupancy as public warehouses, the only signs of such character being on the inside of the inclosures and on the padlocks. It was also shown that employees of the bankrupt from time to time removed and shipped goods from such inclosures and replaced them with others."

In deciding that there was no possession in the pledgee the Supreme Court said:

"The general law of pledge requires possession, and it cannot exist without it. Casey v. Cavaroc, 96 U. S. 467. There was scarcely a semblance of an attempt at such change of possession from the hands of the knitting company to the hands of the warehousing company. Actual possession of the property in question was exercised by and existed with the knitting company substantially the same after the issuing of the receipts as before. It is a trifling with words to call the various transactions between the knitting company and the warehousing company a transfer of possession from the former to the latter. There was really no delivery, and no change of possession, continuous or otherwise. The alleged change was a mere pretense, a sham." Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779; Union Trust Co. v. Wilson, 198 U. S. 530, 25 S. Ct. 766, 49 L. Ed. 1154; Fourth National Bank v. Millbourne, 172 F. 177, 96 C. C. A. 629, 30 L. R. A. (N. S.) 552; Moors v. Reading, 167 Mass. 322, 45 N. E. 760, 57 Am. St. Rep. 460; Drury v. Moors, 171 Mass. 253, 50 N. E. 618; American Can Co. v. Erie Preserving Co., 183 F. 96, 105 C. C. A. 388.

[3] This case being here properly on an appeal, the petition to superintend and revise will be dismissed, and the decree appealed from will be affirmed.

Case No. 2233, dismissed.

Case No. 2244, affirmed.