## In re COATES, BENNET & REIDENBACH, Inc.

## Appeal of LINCOLN ALLIANCE BANK.

(Circuit Court of Appeals, Second Circuit. May 21, 1926.)

### No. 292.

Bankruptcy ⟫184(1)—Pledgee of warehouse receipt for scrap iron, having permitted bankrupt to retain possession after discovering property had been removed from warehouse, held not entitled to proceeds thereof.

Pledgee of warehouse receipt for scrap iron, which had been removed from warehouse by bankrupt unknown to pledgee, *held* not entitled to proceeds after bankruptcy, where it had permitted bankrupt to retain possession after discovery of conversion, though requiring that it be marked as its property.

Appeal from the District Court of the United States for the Western District of New York.

In the matter of the bankruptcy of Coates, Bennet & Reidenbach, Inc. From an order denying the petition of the Lincoln Alliance Bank for proceeds of certain property, petitioner appeals. Affirmed.

The bankrupt corporation traded in scrap iron and other metals in Rochester, N. Y. It borrowed for the purposes of its business from the appellant, hereinafter called the bank. Lackawanna Storage Yards, Inc., was a corporation organized for the purpose of conducting the business of warehousemen. Its officers were all persons identified with the bankrupt as its officers, or perhaps employees. For some time prior to the occurrences giving rise to this litigation it seems to have done no business.

When the bankrupt desired to borrow, and the bank was willing to lend upon the security of metals owned by the bankrupt, it was agreed that a building known as No. 6 on the bankrupt's premises should be leased to the Lackawanna Storage Yards, the metals which were the security for the loans to be made by the bank to the bankrupt were to be stored therein, and the Lackawanna Company's warehouse receipt issued for the same to the bankrupt, which then delivered said receipts to the bank as collateral security for the promissory notes taken for the loans agreed upon.

This scheme was carried out; building No. 6 was rented, and the rental paid; various kinds of metal were stored in No. 6; warehouse receipts were issued and were delivered as above stated. The actual custodian of building No. 6 was one Blum, an employee of the bankrupt, who evidently did very much as

12 F.(2d)—32

he pleased in using the buildings of the bankrupt for such purposes as he from time to time preferred.

For several months the metals lay in building No. 6; then the bankrupt desired to use that building for some purpose of its own, whereupon Blum moved the metal into building No. 4, where the bankrupt did a considerable part of its business, and with which building the Lackawanna Storage Yards had no concern whatever.

There this metal lay for about six months, in the possession and on the premises of the bankrupt, and not marked or distinguished in any way from other metals on the same premises and belonging to the bankrupt.

The bank did not know that this transfer from building No. 6 to No. 4 had been made until about the expiration of the above-stated six months period. When it learned where the stored or pledged metal was, it directed or requested that the piles in which it had an interest should be tagged or marked. Just how or how prominently this was done does not appear, but some time in July, 1921, the metal as it lay in bankrupt's building No. 4 was marked "so as to show ownership in the" bank.

On September 22, 1921, the bankrupt was adjudicated; the trustee took possession of bankrupt's place of business and so obtained physical custody of the metal claimed by the bank. By agreement it was sold, and the proceeds held awaiting the result of a petition filed by the bank, praying an award of the proceeds of the sale on the ground that the metal had belonged to it.

The court below held that the attempted pledge was invalid, and awarded the fund to the trustee. The bank appealed.

W. F. Strang and Havens, Mann, Strang & Whipple, all of Rochester, N. Y., for appellant.

W. A. Swan, of Rochester, N. Y., for trustee in bankruptcy.

Before HOUGH, MANTON, and MACK, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The history of this transaction has three chapters: First, relating to the time when the metal lay on the leased premises of a duly incorporated warehouse company; i. e., in building No. 6. Second, when the bankrupt (unknown to the bank) repossessed itself of the goods and deposited them in its own building and one in daily

use for its own purposes. Third, when the bank, learning what had been done and being fully able itself to take possession of the metal, left it with the bankrupt, though marked as the property of the bank in such a manner that (as one witness puts it) one who came near could read what was on the tag.

In form the transaction between borrower and lender was an assignment by way of pledge of the Lackawanna Storage Yards warehouse receipts. Admittedly that incorporated company is still liable on its receipts; but it was a mere shell, and when this bankruptcy occurred it crumbled.

An argument might be made that the bank's right to the proceeds of the metal could not grow out of its ownership of the warehouse receipt, because the metal as metal was never pledged by bankrupt to bank. But we shall assume in favor of appellant (but without so holding) that there was an intent directly to pledge this metal to the bank.

In anything like the form presented by this record we have not hitherto considered this question, but in American Can Co. v. Erie Preserving Co., 183 F. 96, 105 C. C. A. 388, we held, following Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779, that however honest, however clear of all fraud or fraudulent intent, a pledge may be, it is by law "utterly invalid unless accompanied by actual or constructive possession."

Let it now be assumed (but not held, as the point is not necessary for decision) that the original method of procedure showed an actual change of possession from bankrupt to warehouse company, followed by a valid pledge of a warehouse receipt as an instrument of title, and that this transaction was within Union Trust Co. v. Wilson, 198 U. S. 530, 25 S. Ct. 766, 49 L. Ed. 1154. Let it be next assumed that the bank should not be and was not placed in any worse position by the bankrupt's conversion of the metal through the transfer thereof from building No. 6 to No. 4.

But with all these assumptions the time admittedly came when the bank knew what had occurred, knew it had been wronged, had full opportunity to resume possession of the goods, and did not do so; it left the metal in the possession of the bankrupt pledgor. The legal status depends upon what was done last, and when that situation is considered there is no legal difference between this case and Security Warehousing Co. v. Hand, 206 U. S. 415, 27 S. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789.

Order affirmed, with costs.